UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

Jianmin Jin and Chunyou Xie,
on behalf of themselves and other similarly situated,

        Plaintiffs,

— against —

Shanghai Original, Inc.; East Brother Corp.; Always Good
Brothers, Inc.; Shanghai City Corp.; Shanghai Duplicate
Corp.; Kiu Sang Si a/k/a Joseph Si; Mimi Si; Yiu Fai Fong;
Tun Yee Lam; and Solomon C Liou,

        Defendants.

16-cv-5633 (ARR) (JO)

**Opinion & Order**

**Not for electronic or print
publication**

---

ROSS, United States District Judge:

The two named plaintiffs, along with nine opt-in plaintiffs, bring claims under the Fair Labor

Standards Act (FLSA) and New York Labor Law (NYLL) for violations of state and federal minimum

wage and overtime laws by Joe's Shanghai restaurant, which has locations in Midtown Manhattan,

Chinatown, and Flushing, Queens. The named plaintiffs both worked at the Flushing location, while

the opt-in plaintiffs—with one exception—worked in Midtown or Chinatown. The defendants have

moved to decertify the FLSA collective action conditionally certified by Magistrate Judge Orenstein

as to workers at the Midtown and Flushing (but not Chinatown) locations of Joe's Shanghai. The

plaintiffs, in turn, have filed a motion for final certification of this FLSA collective action, as well as

for certification of a NYLL class action.

Because the record developed in discovery shows that there was no common unlawful

employment policy or practice shared by the Midtown and Flushing locations, the defendants' motion

for decertification of the collective action is granted and the plaintiffs' cross-motion for final

certification is denied. For substantially similar reasons, the plaintiffs' motion for class certification is

denied as to the Midtown location, but granted as to the Flushing location.

## BACKGROUND

### A. Joe's Shanghai restaurant

Although they share a single name and website, the three locations of Joe's Shanghai are now independently owned and managed. The website was created when Kiu Sang Si owned a part of all three restaurants, and has not been changed since for reasons of economy. Tun Yee Lam Decl. ¶ 18, ECF No. 98 ("Lam Decl."); Kiu Sang Si Decl. ¶ 20, ECF No. 99 ("Si Decl."). Si created the menu for Joe's Shanghai; although each location has its own chef, the menus for all three locations are "more or less the same." Kiu Sang Si Dep. 36, 45–46, ECF No. 102-4 ("Si Dep.")

The Flushing location was originally owned and operated by Shanghai Original, Inc. Lam Decl. ¶ 2. Since 2013, however, this location has been owned and operated by East Brother Corp. *Id.* ¶¶ 1, 6. The Chinatown location is owned and operated by Shanghai Duplicate Corp, and the Midtown location is owned and operated by Shanghai City Corp. Si Decl. ¶¶ 8, 13. The Chinatown and Midtown locations do not share management or an employment policy with the Flushing location. *Id.* ¶¶ 11, 14.

Kiu Sang Si owns half of the shares of both the Chinatown and Midtown locations. *Id.* ¶¶ 8–9, 13–14. In 2013, Si sold his shares in the Flushing location to Tun Yee Lam, who owns East Brother Corp. with Yiu Fai Fong. Si Dep. 40; Lam Decl. ¶ 6. Neither Lam nor Fong own or are involved in managing the Chinatown or Midtown locations. Si Decl. ¶¶ 8–9, 13–14. Si, who was once the head chef at the Flushing location, is no longer involved with running that location, although he still occasionally stops by the restaurant. Lam Decl. ¶ 6; Tun Yee Lam Dep. 14, 24, ECF No. 102-5 ("Lam Dep."). At the Flushing location, Fong is in charge of hiring, firing, determining work schedules, and setting the rate of pay for dining room workers and the present head chef, Gui Bing Shi, is in charge of these tasks for kitchen workers. Lam Decl. ¶ 7. [1]

---

[1] Lam testified at his deposition that Si has hired kitchen workers at the Flushing location since 2013 but, given that he immediately thereafter said that Gui Bing Shi fires kitchen workers and sets their schedules, this was likely an error on his part or on the stenographer's part. *See* Lam Dep. 24–25.

Since 2011, the Midtown location has been managed by William Ko. William Ko Decl. ¶ 3, ECF No. 97 ("Ko Decl."). From 2009 to 2011, Ko was the assistant manager. *Id.* As manager, Ko ensures that all employees were paid at least the minimum wage plus overtime. *Id.* ¶ 4. Ko requires employees to punch a time card before they start work, when they finish work, and when they take breaks or come back from breaks. *Id.* He also keeps "payroll records for each employee showing the number of regular hours worked each week, the number of overtime hours worked, the employee's regular hourly rate, overtime hourly rate, regular pay, overtime pay and total pay earned and received each week or bi-weekly." *Id.* Each employee is required to sign these payroll records at the time that they receive their pay. *Id.* The Midtown location has kept a copy of these payroll records for each of the eight opt-in plaintiffs who worked there. *See id.* ¶ 7–14 & Exs. C, E, G, I, K, L, N & P. From 2009 to 2015, employees at the Midtown location were given unpaid breaks of varying lengths—since November 2015, some breaks have been paid. Decl. of William Ko in Opp'n ¶¶ 5–13, ECF No. 109 ("Ko Decl. II"). In 2012, Ko instituted a policy that employees who were required to work during unpaid breaks could apply to receive additional pay for this work. *Id.* ¶ 8. He denied that there was a "policy or practice" of "requiring employees to perform work without pay" or "requiring employees to work during their break time." *Id.* ¶ 15.

The managers of the Flushing location claimed that it was also the Flushing location's policy to pay all workers—including the named plaintiffs—in accordance with applicable minimum wage and overtime laws. Decl. of Yiu Fai Fong in Opp'n ¶ 4, ECF No. 106 ("Fong Decl."); Decl. of Gui Bing Shi in Opp'n ¶ 4, ECF No. 107 ("Shi Decl."). The Flushing location's payroll records, however, have been "inadvertently . . . lost." Fong Decl. ¶ 4. Since at least 2013, employees at the Flushing location have been given paid meal breaks and are not required to work during these breaks. Decl. of Tun Yee Lam in Opp'n ¶ 3, ECF No. 104 ("Lam Decl. II").

### B. The plaintiffs

Named plaintiff Chunyou Xie worked at Joe's Shanghai in Flushing as a chef from November 15, 2014, to January 31, 2016. Compl. ¶ 56, ECF No. 1. Named plaintiff Jianmin Jin was a kitchen worker at Joe's Shanghai in Flushing from September 10, 2014, to May 1, 2015, and then again from August 19, 2016, to August 29, 2016. *Id.* ¶¶ 48–49. Both men alleged that they were paid flat weekly or monthly rates that were less than that required by state and federal labor laws given the number of hours that they worked. Specifically, Jin claimed that he was paid a flat rate of $470 per week for about 58 hours of work, while Xie claimed that he was paid a flat rate of $2000 a month for either 58 or 72 hours a week of work. *See id.* ¶¶ 51, 53, 57, 58, 60.[2]

Jin testified consistently with this at a deposition, stating that he worked at the Flushing location from September 2014 to May 2015, that he worked more than 11 hours a day, five-and-a-half days a week, and that he was paid $470 a week. Jianmin Jin Dep. 16, 18, ECF No. 96-1. Xie failed to show up for a deposition on multiple occasions. As a sanction, Judge Orenstein precluded Xie's testimony from the plaintiff's case-in-chief. Sept. 25, 2017 Status Conf. Mins., ECF No. 76.

Over the course of this litigation, nine plaintiffs opted in to the collective action: Huer Huang, Hui Zhen Huang, Lian Qin Lu, Juan Li, Guo Chang Su, Hui Qiu Chen, Xin He, Jian Ying Lin, and Hihua Zhai (who worked under the name Bin Xu). Of these nine opt-in plaintiffs, only one of them— Xin He—worked at the Flushing location. Xin He worked at the Flushing, Midtown, and Chinatown

---

[2] At all times relevant to this case, the federal minimum wage was $7.25. 29 U.S.C § 206(a)(1). The New York State minimum wage was $7.25 until December 30, 2013. 12 N.Y.C.R.R. § 137-1.2(e). From December 31, 2013 until December 30, 2014, it was $8.00. From December 31, 2014 until December 30, 2015, it was $8.75 an hour. From December 31, 2015 until December 31, 2016, it was $9.00 an hour. *Id.* § 146-1.2(a) (effective Dec. 31, 2015); *id.* § 146-1.2(a) (effective Dec. 31, 2016).

Given that the federal minimum wage was $7.25, and workers are required to be paid time-and-a-half for all hours above 40 worked in a week, under federal law Jin was due at least $485.75 a week for 58 hours a week of work. Xie would be due approximately $2105 a month for 58 hours a week of work, or about $2765 a month for 72 hours a week of work. They would be owed more under the NYLL, of course, given spread-of-hours pay and the higher state minimum wage.

locations of Joe's Shanghai at various times. Opt-in plaintiff Hui Qiu Chen worked at both the Chinatown and Midtown locations, while Jian Ying Lin worked at the Chinatown location only. The other six opt-in plaintiffs worked solely at the Midtown location.[3]

At his deposition, Xin He testified that he first worked at the Midtown location of Joe's Shanghai from December 2008 until October 2011. Xin He Dep. 22, 25, ECF No. 96-15. He was paid $2400 a month, then $2600 a month for 11 hours a day of work. *Id.* at 25–26. He did not punch a time card, or sign any record of the hours he had worked. *Id.* at 26–27. He then worked at the Chinatown location from October 2013 until July 2015, when he was transferred to the Flushing location. *Id.* at 34–35, 45, 48. He worked at the Flushing location as a cook from July 2015 to April 2016, earning first $3,000 and then $3,200 a month. *Id.* at 56. He was working 64.25 hours per week. *Id.* at 56–58. This time, he would punch a time card when he started and left for the day, but not when he went on break, and he would sign a payroll record every month. *Id.* at 57–58. Then, in May 2016, he was given a $200 a month raise to move to the Midtown location, where he worked until he was fired in August 2016. *Id.* at 60, 63, 65. His Midtown payroll records, which he acknowledged signing, showed that he worked 50-55 hours a week, with a base pay rate of $13.30 an hour and an overtime rate of $19.95 an hour. *Id.* at 105–07, 110–12. He stated that these records showed his correct pay and hours other than omitting four and one-half hours of overtime for the three times that he stayed late to close the Midtown location. *Id.* at 107–09.

Six of the seven other opt-in plaintiffs who worked at the Midtown location testified that, since at least 2013, (1) they were paid at least the legal minimum wage plus overtime, (2) they had to punch time cards, (3) they signed payroll records every time they were paid, (4) they received notices

---

[3] Another plaintiff, Guo Liang Xu, initially opted in and then withdrew his claims. Mem. of Law in Support of Defs.' Mot. to Decertify Collective Action 6, ECF No. 94 ("Defs.' Mem. of Law"). The defendants sought to preclude the claims of Haihua Zhai due to discovery violations, but Judge Orenstein denied this application. *See* Dec. 21, 2017 Status Conf. Mins., ECF No. 103. Jian Ying Lin, who worked solely at the Chinatown location, was not deposed. Defs.' Mem. of Law at 6.

of pay rate and pay day, and (5) the payroll records kept by the Midtown location were accurate. Huer Huang Dep. 22, 39–42, ECF No. 96-2; Hui Zhen Huang Dep. 23–30, ECF No. 96-4; Lian Qin Lu Dep. 22–24, ECF No. 96-6; Juan Li Dep. 35–38, 46–47, ECF No. 96-8; Guo Chang Su Dep. 29–38, ECF No. 96-10; Hui Qiu Chen Dep. 32–33, 35, 41–48, ECF No. 96-13.[4] The sole labor law violation mentioned by these Midtown workers in their deposition testimony was that they were sometimes required to do unpaid labor during their breaks. *See* Huer Huang Dep. 34, 39; Hui Zhen Huang Dep. 30–32; Lian Qin Lu Dep. 26–27; Guo Chang Su Dep. 39–41. Most significantly, Lu stated that she was sometimes required to wrap wontons for the entire length of the break between lunch and dinner; she was not paid for this time, but was given a one-dollar increase in her regular hourly pay as compensation. Lian Qin Lu Dep. 26–27; Decl. of Lian Qu Lu in Supp. of Final Certification of Collective and Class Action ¶¶ 6–11, ECF No. 102-1.

The exception to this rule was Huihua Zhai, who worked as a delivery person at the Midtown location from November 25, 2013, to February 24, 2015. Decl. of Haihua Zhai in Opp'n to Defs.' Mot. to Decertify Collective Action ¶ 3, ECF No. 108-4 ("Zhai Decl."). Like the Flushing workers, Zhai alleged that he was paid a flat rate that was less than he was due under minimum wage and overtime laws: He was paid a flat rate of $200 a week, or $5 an hour (assuming a forty-hour work week). *Id.* ¶¶ 4, 16. (His notice of pay rate and pay day mentions a tip credit of $3 a hour, which would bring him up to a rate of $8 an hour. *See* Decl. of John Troy in Opp'n to Defs.' Mot. to Decertify Collective Action, Ex. 2, ECF No. 108–2; Ko Decl. II, Ex. Q at 5, ECF No. 109-1.) But although Zhai alleged that he sometimes worked more than forty hours a week or performed non-tipped labor, he was never

---

[4] There is no discussion of whether Lu received a notice of pay rate and pay dates in the deposition excerpts in the record before me, but a signed copy of this notice is included in the exhibits. *See* Decl. of David B. Horowitz, Ex. G, at 6, ECF No. 96-7. Huer Huang testified in his deposition that he was initially paid a flat rate of $800 or $850 twice a month, and started getting paid minimum wage and overtime in 2012 or 2013, after William Ko became the manager. Huer Huang Dep. 19, 21. Huang later agreed that the payroll records were accurate and he was paid the minimum wage and overtime from 2012 to 2016. *Id.* at 39–40, 42.

paid more than $200 a week. Zhai Decl. ¶¶ 4, 16–18; *see also* Ko Decl. II, Ex. Q at 2–4, ECF No. 109-1 (payroll records showing Zhai was paid for forty hours at $5 an hour every week).

### C. Procedural history

Xie and Jin brought a putative collective and class action on behalf of workers at all three locations of Joe's Shanghai restaurant alleging, *inter alia*: (1) violations of state and federal minimum wage laws, Compl. ¶¶ 73–81; (2) violations of the state and federal requirement to pay overtime compensation for hours in excess of forty per week, *id.* ¶¶ 82–94; (3) violations of the NYLL's requirement to provide spread-of hours pay (an extra hour's pay at minimum wage for each day where a worker's end time was over ten hours after their start time), *id.* ¶¶ 95–97; (4) violations of the NYLL's requirement to provide meal periods, *id.* ¶¶ 98–102; (5) violations of the NYLL's requirement to keep payroll records, *id.* ¶¶ 103–07; (6) violations of the NYLL's requirement to provide written notice of workers' pay rate at the time of hire, *id.* ¶¶ 108–12; and (7) violations of the NYLL's requirement to provide detailed paystub information, *id.* ¶¶ 113–116.

The plaintiffs moved three times to certify a collective action at the three locations of Joe's Shanghai. Magistrate Judge Orenstein initially granted conditional certification as to the Flushing and Midtown locations, but not the Chinatown location. June 7, 2017 Status Conf. Mins., ECF No. 47. The parties agreed that the FLSA statute of limitations would be tolled as of the date that the plaintiffs moved for conditional certification: April 7, 2017. July 7, 2017 Status Conf. Mins., ECF No. 50. Notice of this action was disseminated to all individuals who had been employees of the Midtown and Flushing locations at any point since April 7, 2014. *See* July 12, 2017 Order (approving proposed notice); Proposed Notice, ECF No. 51. This notice states: "[y]ou may be owed payment if you worked for Joe's Shanghai [in Flushing or Midtown] and were not paid at least the minimum wage for all hours worked. You may also be owed payment if you worked for Joe's Shanghai for more than forty (40)

hours per week and you were not paid overtime." Proposed Notice 2, ECF No. 51. No mention is made of any of the other claims detailed in the complaint. *See id.*

The plaintiffs then moved twice to expand the conditional certification to Chinatown. *See* Mot. for Pre-Mot. Conf. to Expand Conditional Certification, ECF No. 53; Mot. to Certify FLSA Collective Action Defendants' China Town Location, ECF No. 71. Both times, Judge Orenstein denied this application. Aug. 21, 2017 Status Conf. Mins., ECF No. 62; Sept. 25, 2017 Status Conf. Mins., ECF No. 76. Judge Orenstein also denied plaintiffs' request to amend their complaint to include workers at Joe's Shanghai in Chinatown as named plaintiffs. *See* Mot. for Extension of Time to Amend Complaint, ECF No. 64; Sept. 25, 2017 Status Conf. Mins., ECF No. 76. Following the denial of plaintiffs' requests to expand the collective action and amend the complaint, plaintiffs' counsel filed a class action in state court alleging labor law violations on behalf of three workers at the Chinatown location—all of them opt-in plaintiffs in this action—Jian Ying Lin, Hui Qiu Chen, and Xin He. *See* CPLR § 904 Class Action Compl., ECF No. 88-1.

After the close of discovery, the plaintiffs moved for final certification of the collective action and certification of a class action. Mot. to Certify FLSA Collective Action and Rule 23 Class Action, ECF No. 100 ("Pls.' Mot."). The defendants filed a cross-motion seeking to decertify the collective action. *See* Mot. to Decertify Collective Action, ECF No. 94 ("Defs.' Mot.").

## DISCUSSION

**I. The collective action will be decertified because none of the opt-in plaintiffs are similarly situated to the named plaintiffs.**

### A. Legal Standard

The FLSA requires employers to pay workers a minimum wage of $7.25 an hour as well as overtime of "one and one-half times the[ir] regular rate" for each hour worked in excess of forty hours in a week. 29 U.S.C. §§ 206(a)(1), 207(a)(2). In the case of tipped employees, "[t]he FLSA permits employers to take a tip credit up to 50% of the minimum wage except that the credit 'may not exceed

the value of the tips actually received by the employee.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 239–40 (2d Cir. 2011) (quoting 29 U.S.C. § 203(m)). The FLSA has a two-year statute of limitations—three years if a violation is willful. 29 U.S.C. § 255(a).

To enforce their rights under the FLSA, workers can bring their claims as collective actions. *See* 29 U.S.C. § 216(b). Unlike with class actions under Federal Rule of Civil Procedure 23, plaintiffs must affirmatively give their written consent to join a collective action. *Id.* The standards for certifying a collective action are accordingly more lenient, since there is no concern with protecting the due process rights of absent class members who did not choose to join in the litigation. 1 *McLaughlin on Class Actions* § 2:16 & n.12 (14th Ed. 2017) (collecting cases). While courts often use terms derived from class actions to discuss collective actions, "Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis Healthcare Corp v. Symczyk*, 569 U.S. 66, 74 (2013); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010).

In order to join a collective action, opt-in plaintiffs must be "similarly situated" to the named plaintiffs. 29 U.S.C. § 216(b). While the term "similarly situated" is not defined by statute, it is a significantly lower bar than that required for class certification under Rule 23. Indeed, the question of whether opt-in plaintiffs are similarly situated "is quite distinct from the question [of] whether plaintiffs have satisfied the much higher threshold of demonstrating that common questions of law and fact will 'predominate' for Rule 23 purposes." *Myers*, 624 F.3d at 556.

Courts in the Second Circuit typically take a two-step approach to certifying collective actions. *See id.* at 554–55 (approving of, but not requiring, such a two-step approach). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* at 555 (citations omitted). District courts "may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan

9

that violated the law.'" *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). Then, at the second step, "the district court will, on a fuller record, determine whether . . . the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. The [collective] action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Id.* (citations omitted).

At this second stage, a district court "must apply heightened scrutiny in determining whether Plaintiffs are similarly situated for the purposes of the FLSA." *DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 319 (E.D.N.Y. 2014). Although the Second Circuit has not yet provided a set of criteria for courts to consider at this stage, district courts typically look at the following factors: "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Id.* at 320 (quoting *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008)); *accord, e.g.*, *Scott v. Chipotle Mexican Grill, Inc.*, 12-CV-8333, 2017 WL 1287512, at *8 (S.D.N.Y. Mar. 29, 2017); *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011) (adopting these same criteria at the conditional certification stage).

### B. The Midtown opt-in plaintiffs are not similarly situated to the named plaintiffs because the Midtown and Flushing locations had separate management, ownership, and employment policies.

District courts in the Second Circuit "have regularly found named plaintiffs to be similarly situated to employees at locations where they did not work, *provided* that the plaintiffs demonstrate that they were all subject to the same allegedly unlawful policy or practice." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) (emphasis added) (citing *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 516–17 (E.D.N.Y. 2011)). But even at the preliminary stage of conditional certification, where the burden of proof is quite low, "courts consider whether the plaintiffs have made an adequate factual showing to support an inference that such a uniform policy or practice exists,

and whether the locations share common ownership or management." *Id.* (collecting cases). Where plaintiffs cannot make this showing, a court should not certify a collective action. *See Trinidad v. Pret A Manger USA*, 982 F. Supp. 2d 545, 557–60 (S.D.N.Y. 2013).

In this case, the factual record developed by discovery shows that there is no uniform employment policy or practice across the Midtown and Flushing locations, and that these locations do not share common ownership or management.[5] Indeed, the FLSA claims of the Midtown opt-in plaintiffs are entirely distinct from the claims of the named Flushing plaintiffs. Workers at the Flushing location alleged that they were paid a flat rate that was less than minimum wage plus overtime, while workers at the Midtown location acknowledged that they were paid minimum wage and overtime, but claimed that they did some unpaid labor during meal breaks. The plaintiffs therefore cannot even meet the showing required to certify a conditional collective action, let alone satisfy the more demanding showing required at the stage of final certification.

The two named plaintiffs alleged that they were paid an illegally low flat rate while working at the Flushing location. Compl. ¶¶ 51, 53, 57, 58, 60. One of the named plaintiffs did not appear for his deposition, but the other testified consistently at his deposition. Jianmin Jin Dep. 16, 18. Further, although the defendants claim that they paid the Flushing employees at least minimum wage and overtime, they have lost the payroll records that would prove this. Fong Decl. ¶ 4.

In contrast, all of the Midtown plaintiffs besides Xin He and Huihua Zhai explicitly acknowledged during their depositions that they were paid at least the minimum wage and overtime

---

[5] The plaintiffs did not appeal Judge Orenstein's denial of conditional certification as to the Chinatown location, and do not now request certification of a collective action encompassing the Chinatown location. *See* Pls.' Mem. of Law at 1 (stating that the plaintiffs seek certification of a collective action of all non-managerial employees at the Flushing and Midtown locations since October 7, 2013). For this reason, I will only discuss the Flushing and Midtown locations.

since at least 2012 or 2013.[6] *See* Huer Huang Dep. 39; Hui Zhen Huang Dep. 30; Lian Qin Lu Dep. 23–24; Juan Li Dep. 35–38; Guo Chang Su Dep. 38; Hui Qiu Chen Dep. 41–48. This is documented in payroll records, and confirmed by the affidavit of the Midtown manager. Ko Decl. ¶ 4, 7–14 & Exs. C, E, G, I, K, L, N & P. Rather than claiming that they were paid an illegally low flat rate, the Midtown opt-in plaintiffs testified that they are owed money for unpaid labor they performed during their meal breaks. *See* Huer Huang Dep. 34, 39; Hui Zhen Huang Dep. 30–32; Lian Qin Lu Dep. 26–27; Guo Chang Su Dep. 39–41. And not all of them raised this claim: when asked, Hui Qiu Chen could not articulate any reason why Joe's Shanghai owed her money, other than that she worked there a very long time. *See* Hui Qiu Chen Dep. 49.

The record developed in discovery also shows that the Flushing and Midtown locations had significantly different policies as to meal breaks. One of the owners of the Flushing location swore that meal breaks were paid. Lam Decl. II ¶ 3. This is unrebutted by the plaintiffs, and consistent with Xin He's deposition testimony that he punched a time clock when he started and ended work at the Flushing location, but not when he went on breaks. Xin He Dep. 57. The Midtown meal break policy was far more complex, and changed several times during the relevant period, but meals breaks were generally unpaid. Ko Decl. II ¶¶ 5–13.

The plaintiffs nonetheless argue for final collective action certification because the three locations of Joe's Shanghai are (a) in a single state, (b) show signs of shared management such as a single website and similar menus, and (c) the restaurants had a common practice of failing to pay employees for all hours worked. *See* Mem. of Law in Supp. of Pls.' Mot. for Conditional and Class Certification and Notice to the Class 6–14, ECF No. 101 ("Pls.' Mem. of Law"). But that all three locations of Joe's Shanghai are in New York is not a factor that supports final collective action

---

[6] Since the FLSA has a two- or three-year statute of limitations and the parties agreed to toll this statute of limitations as of April 7, 2017, no events before 2014 are relevant to the FLSA claims.

certification; at best, it does not support decertification. And defining the unlawful employment policy as "fail[ing] to pay employees for all hours worked," *id.* at 12, is far too abstract to show that the plaintiffs are similarly situated. Paying employees an unlawfully low flat rate is not the same thing as generally complying with minimum wage and overtime laws but sometimes failing to pay employees for the work they do on an as-needed basis during meal breaks.

Further, despite the plaintiffs' contentions to the contrary, the record developed in discovery shows that the Midtown and Flushing locations have had separate ownership and management since at least 2013. Certainly, as the plaintiffs note, there is some evidence of coordination between the three locations of Joe's Shanghai: they have similar menus, the same name, and share a single website. *See* Pls.' Mem. of Law at 10–11. But the deposition testimony of the plaintiffs about the different employment policies of the various locations corroborates the defendants' assertion that the locations are separately managed. And the defendants' assertion that the Midtown and Flushing locations have not had any common owners since 2013 is unrebutted.

Finally, a consideration of the defenses individual to each plaintiff, as well as fairness and procedural considerations, also militates toward decertification. There may well be reasons why the Midtown opt-in plaintiffs should have their claims joined together: although the defenses to their claims of performing unpaid labor during meal breaks may be individualized, they are alleging a common employment policy by a common employer. It may therefore save the resources of both the court and the parties for their claims to be tried together. But there is no such justification for joining the Midtown and Flushing plaintiffs in a collective action. They have different claims, stemming from a different employment policy maintained by a separately owned restaurant, which happens to have the same name. In short, they are two entirely separate actions: they do not share any defendants; they do not share any plaintiffs; and they do not share any specific FLSA claims.

In sum, the factual record developed in discovery—including the deposition testimony of the opt-in plaintiffs—shows that the Midtown and Flushing locations of Joe's Shanghai did not share a common unlawful employment policy and were in fact separately owned and managed. For this reason, I find that the Midtown opt-in plaintiffs are not similarly situated to the named plaintiffs and decertify the collective action as to the following opt-in plaintiffs: Huer Huang, Hui Zhen Huang, Lian Qin Lu, Juan Li, Guo Chang, and Hui Qiu Chen. *See Trinidad*, 982 F. Supp. 2d at 557–60; *Hamadou*, 915 F. Supp. at 662. I therefore dismiss these individuals' claims without prejudice to their re-filing in a separate suit or suits. *Myers*, 624 F.3d at 555.

### C.  *Xin He and Huihua Zhai are not similarly situated to the named plaintiffs.*

I will also decertify the collective action as to the remaining opt-in plaintiffs and dismiss their claims without prejudice, but for different reasons.

Xin He, unlike any of the other opt-in plaintiffs, worked at the Flushing location. But his deposition testimony shows that, although he may have a NYLL claim, he most likely does not have a FLSA claim for the time he worked at this location. He testified that he worked as a cook from July 2015 to April 2016, earning first $3,000 and then $3,200 a month, for 64.25 hours of work per week. Xin He Dep. 53, 56–58. Even accounting for overtime, this amounts to more than the minimum wage.[7] So long as an employer complies with minimum wage and overtime laws, it does not violate the FLSA to pay someone a fixed amount for a fixed number of hours. *See* 29 C.F.R. § 778.109 ("The [FLSA] does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a piece-rate, salary, commission or other basis.").

While Xin He stated that he received a flat monthly rate from the Flushing location, *see* Xin He Dep. 56, he may have simply thought of his compensation in terms of the total amount of money

---

[7] In fact, under federal law, his employer was only required to pay him roughly $2400 a month. (($7.25 x 40) + ($7.25 x 1.5 x 24.25)) x 4.33 = $2397.60.

he received every month. He also described his pay at Midtown as a flat rate, *see id.* at 76, but later admitted that payroll records showed that he was making $13.30 an hour there, *id.* at 110. He also denied knowing anything about the minimum wage, *id.* at 32, or overtime pay, *id.* at 97. And when asked about his payroll records from Chinatown and Midtown, he denied paying any attention to the hourly wage, overtime wage, or number of hours listed on it, or knowing how his pay was calculated, but acknowledged that he received the correct amount of pay. *Id.* at 77, 81–83, 85–87, 93–107; *see also id.* at 86 ("As long as . . . the amount they gave me match with the salary they promise, then we are okay."). It is thus entirely possible that the defendants were in fact paying him an FLSA-compliant hourly wage plus overtime for a fixed number of hours, but he only thought of his compensation in terms of his take-home pay.

The plaintiffs can nonetheless argue that there is a rebuttable presumption that a flat rate "is intended to compensate employees for forty hours of work. . . . 'An agreement for a fixed weekly salary for more than 40 hours of work per week only complies with the FLSA and [New York] Labor Law if there is an explicit understanding . . . as to regular and overtime rates.'" *Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12 Civ. 9353, 2015 WL 1881080, at *2 (S.D.N.Y. Apr. 24, 2015) (quoting *Amaya v. Superior Tile & Granite Corp.*, No. 10 Civ. 4525, 2012 WL 130425, at *9 (S.D.N.Y. Jan. 12, 2012)). But to the extent that they do so, the defendants can then raise an individualized defense as to Xin He—that there was such an explicit understanding—which makes him not similarly situated to the named plaintiffs. *See DeSilva*, 27 F. Supp. 3d at 320.

Fairness and procedural considerations do not militate in favor of Xin He remaining in the putative collective action here either. There is no right to double recovery under the NYLL and FLSA. *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498, 503–04 (S.D.N.Y. 2017); *see also Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir. 2016). As Xin He is part of the NYLL class of

Flushing employees that I am certifying under Rule 23—and the NYLL provides at least as much in damages as the FLSA—he may still recover any damages he is owed in that part of the action.

Huihua Zhai, on the other hand, has a similar claim to the named plaintiffs: he claims that he was paid a flat rate of $200 a week, regardless of how much he worked. Zhai Decl. ¶¶ 4, 16–18. This amounts to less than the federal minimum wage of $7.25 an hour. Nonetheless, the three factors discussed in *DeSilva* all weigh in favor of dismissing his claims without prejudice. First, because Zhai worked at the Midtown location, he was subject to a different employment policy by a separately managed and owned restaurant than the named plaintiffs. In other words, there are "disparate factual and employment settings." Second, the defense to his claims will be individual to him. Since he was a tipped employee, under federal law he could be paid as little as half the minimum wage as long as he received enough in tips to bring him up to at least $7.25 an hour. *See* 29 U.S.C. § 203(m). Adjudicating this issue will require a mini-trial as to how much he earned in tips, and whether his employer kept records of these tips. There may also be a separate mini-trial over how much, if any, of his labor was non-tipped and thus had to be paid at the standard minimum wage—the plaintiffs claim that over 20 percent of the work he did was non-tipped. *See* Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Decertify Collective Action 6, ECF No. 105. Finally, neither fairness nor procedural considerations weigh in favor of joining Zhai's claims with those of the named plaintiffs. Although he is alleging a different kind of violation and employment policy than the other Midtown opt-in plaintiffs, it would still make more sense for his claim to be tried along with the claims of those who share the same employer and workplace—or on its own.

For these reasons, I will also dismiss the claims of Xin He and Huihua Zhai without prejudice. The defendants' motion for collective action decertification is therefore granted in its entirety.

**II. A class action will not be certified for the Midtown and Flushing locations because the plaintiffs cannot meet the requirement of commonality, and the named plaintiffs' claims are not typical of the claims of the Midtown workers.**

A party seeking class certification must show that their proposed class satisfies all four requirements of Rule 23(a), as well as "at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). The four requirements of Rule 23(a)— referred to as numerosity, commonality, typicality, and adequacy—are that:

> (1)    the class is so numerous that joinder of all members is impracticable;
> (2)    there are questions of law or fact common to the class,
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed R. Civ. P. 23(a). A party seeking class certification must "establish[] by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers*, 624 F.3d at 547. In other words, they must "affirmatively . . . prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350. A district court, in turn, must "assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met." *In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006). While this question is distinct from that of the merits, analyzing it will "[f]requently . . . entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351.

"The Second Circuit has emphasized that Rule 23 should be 'given liberal rather than restrictive construction,' and 'it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification.'" *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009) (citations omitted). Here, however, I must deny class certification. The plaintiffs cannot show either commonality or typicality for their proposed NYLL class of all non-managerial employees at the Midtown and Flushing locations, *see* Pls.' Mem. of Law at 1, for

substantially the reasons discussed above: there is no common unlawful employment policy between the two locations, and the named plaintiffs only worked at the Flushing location.

To show that "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), a plaintiff must "demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution." *Id.* In other words, "[w]hat matters to class certification . . . is not the raising of common 'questions'–even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* . . . . Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (second and third alteration in original) (citation omitted). Nonetheless, "for purposes of Rule 23(a)(2), '[e]ven a single [common] question' will do. We consider dissimilarities not in order to determine (as Rule 23(b)(3) requires) whether common questions *predominate*, but in order to determine (as Rule 23(a)(2) requires) whether there *is* '[e]ven a single [common] question.'" *Id.* at 359 (alterations in original) (internal citation omitted).

The plaintiff argues that "the claims of the proposed class are essentially identical (unpaid minimum wages and unpaid overtime compensation)." Pls.' Mem. of Law 20; *see also id.* at 21–22 (listing three "[c]ommon [f]actual questions" and three "[c]ommon [l]egal [q]uestions"). But, as discussed above, this contention can only be made by casting the claim at too high a level of abstraction. While the Midtown and Flushing plaintiffs may all have wage and hour claims—at least under the NYLL, if not the FLSA—they do not have the same wage and hour claims. Indeed, any question that could be posed would potentially generate different answers between the two groups of plaintiffs. Potential questions include: whether the plaintiffs were paid minimum wage and overtime,

whether records were kept of their hours, and whether they performed unpaid labor during their breaks. Yet the plaintiffs' own answers to each of these questions varies by location.[8]

Moreover, the plaintiffs' claims are not subject to classwide proof or resolution. Because the record shows that there was a separate employment policy at the Midtown and Flushing locations, the plaintiffs would be required to amass different evidence as to each.

For essentially the same reasons, the named plaintiffs cannot meet the typicality requirement. "A proposed class satisfies Rule 23(a)(3) if 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *Marisol A. v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir.1993), *aff'd*, 126 F.3d 372 (2d Cir. 1997)). But, here, the named plaintiffs' claims do not "arise from the same practice or course of conduct," *id.*, as the claims of the Midtown employees. The Midtown employees' claims instead arise from a separate employment policy maintained by a separately owned and managed restaurant. The named plaintiffs' claims are therefore not typical of the Midtown employees in the proposed class.

Because the plaintiffs cannot meet the requirements of Rule 23, I will not certify the proposed class of Midtown and Flushing employees. See *Dukes*, 564 U.S. at 350. But this does not mean that a

---

[8] There is one question posed by the plaintiffs that may have a common answer: whether the Midtown and Flushing employees received spread-of-hours pay for working more than ten hours in a day. *See* Pls.' Mem. of Law at 22. Although there is no mention of spread-of-hours pay in any of the affidavits or depositions of the Midtown employees in the record before me, the plaintiffs note that the defendants did not make any entries in the column labeled "spread" in the payroll records of the Midtown employees. Pls.' Mem. of Law in Reply to Defs.' Opp'n, at 11–13, ECF No. 111 ("Pls.' Reply"). And the named plaintiffs alleged in the complaint that they were paid a flat rate that did not include spread-of-hours pay. *See* Compl. ¶¶ 51, 53, 57–58, 60. But even if the answer to this question is the same for the Flushing and Midtown workers, this common answer is the result of two separate policies by two separately owned and managed employers. This question is thus not susceptible to classwide proof or resolution, and does not suffice to meet the plaintiffs' burden of showing commonality. Moreover, even if it did, the plaintiffs cannot meet their burden of showing that this common question predominates over other questions, given that it is not the primary wage and hour claim advanced by either the Midtown or the Flushing employees. *See* Fed. R. Civ. P. 23(b)(3).

class of just Midtown employees or just Flushing employees cannot be certified. Indeed, as I discuss below, the Flushing employees meet all the requirements of Rule 23.[9]

## III. A class action will be certified as to employees of the Flushing location because the plaintiffs meet the requirements of both Rule 23(a) and Rule 23(b)(3).

### A. The Flushing workers can meet all four requirements of Rule 23(a)— numerosity, commonality, typicality, and adequacy of representation.

#### 1. Numerosity

Under Second Circuit precedent, numerosity is generally presumed when a proposed class has forty or more members. *Consol. Rail Corp v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Classes that encompass "fewer than 20 members will likely not be certified absent other indications of impracticability of joinder," while prospective classes of twenty to forty members fall in a "gray area." 1 *Newberg on Class Actions* § 3:12 (5th ed. 2011). The plaintiffs have the burden of showing numerosity, but they need not prove the "exact class size or identity of class members to satisfy the numerosity requirement." *Robidoux*, 987 F.2d at 935 (citations omitted).

The defendants have "identified 35 former and present employees . . . consisting of all known employees of the Flushing . . . restaurant[] during the past three years." Defs.' Mem. of Law in Opp'n 16, ECF No. 110 ("Defs.' Opp'n"). They argue that a class of just the Flushing employees therefore "may not be so numerous that joinder of all members is impracticable." *Id.* Plaintiffs reply that the Flushing location alone can meet Rule 23's numerosity requirement. They argue that there may have been more than 40 Flushing employees since the defendants lost their records, and classes can be certified with fewer than 40 members. Pls.' Reply 9.

Neither party, however, notes that the number of Flushing employees was calculated based on the FLSA's three-year statute of limitations, whereas the New York Labor Law has a six-year statute of

---

[9] I reserve the question of whether the NYLL claims of Midtown employees should be certified under Rule 23 for if and when the Midtown opt-in plaintiffs re-file their claims as named plaintiffs.

limitations. N.Y. Lab. Law § 663(3). Presumably, the defendants identified the 35 employees when they disseminated notice of this action to all employees since April 7, 2014. *See* Proposed Notice, ECF No. 51. On the other hand, the plaintiffs' proposed Rule 23 class includes all current and former non-managerial employees from October 7, 2010—six years prior to the filing of the complaint—until the present. Pls.' Mem. of Law at 1. The Flushing restaurant has been in business since 1994, Lam Decl. ¶ 2, and the evidence before me indicates that there was a relatively high rate of employee turnover. Since there have been 35 employees at this location in the past three years, it is almost certain that there have been over 40 workers in the past six years. I therefore find that the plaintiffs have satisfied their burden to demonstrate numerosity.

### 2. Commonality

As discussed above, commonality requires that a classwide proceeding can "generate common answers" as to at least one common question of fact or law. *Dukes*, 564 U.S. at 350, 359. Here, there can be little question that the Flushing employees can meet this standard. Indeed, the defendants do not even argue that they cannot, instead focusing the entirety of their argument on the lack of commonality between the Flushing and Midtown workers. *See* Defs.' Opp'n at 16–19.

Jianmin Jin and Chunyou Xie alleged in the complaint that they were paid an illegally low flat rate of pay that did not account for minimum wages or overtime, or for spread-of-hours pay. Compl. ¶¶ 51, 53, 57–58, 60. Xie did not appear for his deposition, but Jin and Xin He testified at their depositions that they were paid flat rates in lieu of an hourly wage. Jianmin Jin Dep. 16, 18; Xin He Dep. 53, 56–58. (One of the owners of the Flushing location swears that they complied with minimum wage and overtime requirements, but they have lost their payroll records. Fong Decl. ¶ 4.) The complaint also raises additional class questions such as whether workers at the Flushing location received time-of-hire notices detailing their pay day and pay rate. Compl. ¶ 68(f).

This raises a number of common questions relating to the "defendants' payroll practices, overtime policy, and compliance with minimum wage requirements." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. 2007). For example, did defendants have a policy of paying their employees a flat rate regardless of minimum wage, overtime, and spread-of-hour requirements? That the facts of each workers' claims, and the amount of damages they can recover —if any—may differ is irrelevant.[10] "'The differences among the Plaintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual Plaintiff might be entitled[,]' . . . not the amenability of the plaintiffs' claims to the class action form." *Id.* (quoting *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001)). I therefore find that the plaintiffs have shown commonality as to the Flushing employees.

### 3. *Typicality*

For essentially the same reasons, the plaintiffs can also prove typicality. Again, the defendants do not argue that they cannot, arguing only that the named plaintiffs have failed to show that their claims are typical of the Midtown workers' claims. *See* Defs.' Opp. at 19–20.

The commonality and typicality inquiries tend to "meld into one another for if the class representative's claims are 'typical,' it is likely that those claims are common to the rest of the class." 1 *Newberg on Class Actions* § 3:26; *see also Dukes*, 564 U.S. at 349 n.5 ("[T]he commonality and typicality requirements of Rule 23(a) tend to merge." (citation omitted)). Thus, if "plaintiffs assert . . . that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality." *Iglesias-Mendoza*, 239 F.R.D. at 371 (alteration in original) (quoting *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002)). Here, the plaintiffs assert that the defendants did not pay the named plaintiffs the minimum wage, overtime, and spread-of-

---

[10] While Xin He testified that he was paid a flat rate that was greater than required by federal minimum wage and overtime laws, this flat rate may have nonetheless been slightly less than that required by New York State's minimum wage, overtime, and spread-of-hours requirements.

hour pay required by the NYLL. Compl. ¶¶ 51, 53, 57–58, 60. As these claims are typical of the class, *see id.* ¶ 68(b)–(d), this is sufficient to show typicality.

### 4. Adequacy of Representation

I also find that the named plaintiffs are adequate representatives of the class. This requirement "also tend[s] to merge" with the typicality and commonality requirements, although the former "requirement also raises concerns about the competency of class counsel and conflicts of interest." *Dukes*, 564 U.S. at 349 n.5 (citation omitted). "Two factors generally inform whether class representatives satisfy the Rule 23(a)(4) requirement: '(1) absence of conflict[s of interest] and (2) assurance of vigorous prosecution.'" *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 170 (2d Cir. 2001) (citations omitted), *abrogated on other grounds by Dukes*, 564 U.S. 338.

Defendants argue that Chunyou Xie is not an adequate representative because he did not appear for his scheduled deposition and, as a sanction, has been precluded from testifying in the plaintiffs' case-in-chief. Defs.' Opp'n 21. They also argue that Jianmin Jin is not an adequate class representative because he "does not have a basic understanding of the facts and laws governing his own claim"—specifically, he is not familiar with the names of the corporations doing business as Joe's Shanghai or their owners, and he does not know the minimum wage. *Id.* at 20–21. Finally, they argue that the filing of a state-court class action by workers at the Chinatown location—represented by the same counsel—suggests that "other class members do not feel that Plaintiffs can adequately represent them and seek to control the litigation." *Id.* at 21.[11]

The defendants' arguments fall short of the mark. That plaintiffs' counsel chose to file a state class action with workers at the Chinatown location as named plaintiffs after thrice failing to certify a conditional collective action as to this location has no bearing on whether other class members view

---

[11] Since the defendants do not challenge the adequacy of class counsel's representation—and I address that issue below in the context of Rule 23(g)—I will not address that issue here.

the named plaintiffs as adequate representatives. And that Jianmin Jin is not familiar with various corporate entities or the minimum wage rate is irrelevant; he is required to know only the relevant facts underpinning his claim—*i.e.*, how much he was paid, whether he received a time-of-hire pay rate notice, et cetera. "Rule 23 requires that the named plaintiffs have adequate personal knowledge of the essential *facts* of the case . . . . For the legal underpinnings of their claims, plaintiffs are entitled to rely on the expertise of their counsel." *Iglesias-Mendoza*, 239 F.R.D. at 372 (citing *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 124 (S.D.N.Y. 2001)).

Although defendants do not cite any authority on point, Chunyou Xie's repeated failure to appear for his deposition does give me serious pause about his ability and willingness to "vigorously prosecute" this matter. Ultimately, however, this is beside the point because only one representative is required for a class action. *See Shahriar*, 653 F.3d at 253. If I find that Xie is an inadequate representative, I can "substitute another class plaintiff [for him] or simply allow the remaining representative Plaintiff[] to proceed with the class action." *Id.* And the defendants have not provided me with any reason to believe that Jin has any conflicts of interest with any member of the proposed class or that he will not vigorously prosecute this matter. On the contrary, he "possess[es] the same interest and suffer[s] the same injury as the [other] class members." *Robinson*, 267 F.3d at 171 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997)). I therefore find that Rule 23(a)(4)'s adequacy-of-representation requirement has been met.

## B. The Flushing workers can meet the requirements of Rule 23(b)(3)—predominance of common questions and superiority of a class action.

To certify a class action, in addition to meeting the requirements of Rule 23(a), plaintiffs must also meet the requirements of one of Rule 23(b)'s three subsections. *Dukes*, 564 U.S. at 345. Here, they argue only for certification of a class under Rule 23(b)(3). Pls.' Mem. of Law 18. And no other subsection is applicable. *See* Fed. R. Civ. P. 23(b). A court may certify a class under Rule 23(b)(3) if the plaintiffs prove "that the questions of law or fact common to class members predominate over

any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These two prongs are typically known as "predominance" and "superiority."

The defendants do not argue that plaintiffs fail to meet the requirements of Rule 23(b). Indeed, they do not address the requirements of Rule 23(b) at all. *See* Defs.' Opp'n 22 ("Plaintiffs . . . fail to demonstrate compliance with each of the prerequisites of Rule 23—numerosity, commonality, typicality, and adequacy."). Nonetheless, the plaintiffs must show by a preponderance of the evidence that they meet Rule 23(b)'s requirements. *Myers*, 624 F.3d at 547.

### 1. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. "If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (citing *Amchem Prods., Inc.*, 521 U.S. at 623–24). This inquiry "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case. An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). For common questions, "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Id.* (alteration in original) (citation omitted). Nonetheless, "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages.'" *Id.* (citation omitted). The Second Circuit also recently reaffirmed "that 'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification' under Rule 23(b)(3)." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Seijas v. Republic of Argentina*, 606

F.3d 53, 58 (2d Cir. 2010)). Instead, this is "simply one 'factor that we [had to] consider in deciding whether issues susceptible to generalized proof outweigh individual issues' when certifying the case as a whole." *Id.* (alteration in original) (quoting *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 241 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)).

Here, common questions predominate. The crux of the plaintiffs' claims is susceptible to classwide proof: did the defendants have a policy or practice of paying employees flat rates regardless of minimum wage, overtime, and spread-of-hour requirements? So is a secondary question: did the defendants have a policy or practice of not providing time-of-hire notices of pay day and pay rate to workers? Certainly, there will need to be individualized testimony as to the actual wages and hours of various workers, or whether they received time-of-hire notices, but this amounts to individualized testimony as to damages. And "numerous courts [in the Second Circuit] have found that wage claims are especially suited to class litigation—perhaps 'the most perfect questions for class treatment'— despite differences in hours worked, wages paid, and wages due." *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 359–60 (E.D.N.Y. 2011) (collecting cases), *vacated in part on other grounds*, 773 F.3d 394 (2d Cir. 2014). I therefore find that, despite individualized issues as to damages, the common questions as to liability are sufficient to show predominance.[12] *See, e.g., Benavides v. Serenity Spa NY Inc.*, 15-CV-9189, 2017 WL 3835880, at *12 (S.D.N.Y. Sept. 1, 2017) (finding that common issues predominated and certifying a wage-and-hour class action because the plaintiffs alleged that the defendants had "common policies" that did not comply with the NYLL); *Cazares v. Ava Rest. Corp.*, 15-CV-0477, 2017 WL 1229727, at *7–8 (E.D.N.Y. Mar. 31, 2017) (same); *Fonseca v. Dircksen & Talleyrand Inc.*, No. 13 Civ. 5124, 2015 WL 5813382, at *5–6 (S.D.N.Y. Sept. 28, 2015) (same).

---

[12] If this case proceeds to trial, I may find that the issues of damages and liability should be bifurcated under Rule 23(c)(4), with liability tried on a classwide basis and damages determined on an individual basis. *See, e.g., In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 722 F.3d 838, 860–61 (6th Cir. 2013); *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 592–93 (S.D.N.Y. 2013).

## 2. Superiority

The superiority requirement of Rule 23(b)(3) is also satisfied here. I find persuasive plaintiffs' argument that "given the expenses of litigation and the relatively small size of the numerous individual claims, many workers would be unable to pursue redress for their claims absent class certification." Pls.' Mem. of Law 28. I further credit plaintiffs' assertion that the predominantly immigrant workers implicated by this action may fear retaliation. *Id.* I note that there were interpreters present for the depositions of all of the plaintiffs in this case, and that none of the Flushing workers opted-in to the collective action after being given notice. Much like in *Iglesias-Mendoza*, "[t]he proposed class members are almost exclusively low-wage workers with limited resources and virtually no command of the English language or familiarity with the legal system. It is extremely unlikely that they would pursue separate actions." 239 F.R.D. at 373.

Defendants argue that the unavailability of liquidated damages in NYLL class actions is a bar to class certification, Defs.' Opp'n 22, but this position has been squarely rejected by district courts in the Second Circuit. *See Iglesias-Mendoza*, 239 F.R.D. at 373–74 (collecting cases). In fact, the only case that the defendants cite for this proposition actually found that the unavailability of liquidated damages in a NYLL class action was a reason to certify a rule 23(b)(3) *opt-out* class. *See Ansoumana*, 201 F.R.D. at 88. "New York law allows plaintiffs to waive their liquidated damages claim for overtime wage class actions 'as long as putative class members are given the opportunity to opt out of the class in order to pursue their own liquidated damages claims.'" *Iglesias-Mendoza*, 239 F.R.D. at 373–74 (quoting *Mascol v. E & L Transp., Inc.*, No. CV 03-3343, 2005 WL 1541045, at *8 (E.D.N.Y. June 29, 2005)). Like other judges in this Circuit, I find that Rule 23(b)(3)'s opt-out procedure is sufficient to protect the interests of the prospective class members in this case, especially given the unlikelihood that they will pursue their claims absent this class action.

I therefore find that a 23(b)(3) class action is superior to individual actions for adjudicating this controversy, and certify a class of all non-managerial employees at the Flushing location.

## C. I will appoint Troy Law class counsel.

Finally, there is the issue of Troy Law's application to be appointed class counsel pursuant to Rule 23(g). *See* Pls.' Mem. of Law 18. This subsection provides that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g). In so doing, I am required to consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class;

Fed. R. Civ. P. 23(g)(1)(a). In support of his request, plaintiffs' counsel notes that he has considerable experience in both class actions and employment law cases. Decl. of John Troy in Supp. of Final Certification of Collective and Class Action ¶ 4, ECF No. 102.

The defendants do not oppose this request, but have separately requested that I issue them attorney's fees as sanctions for plaintiff's "baseless and frivolous collective action allegations." Defs.' Mem. of Law 24–25. They argue that the plaintiffs have made "allegations of FLSA minimum wage and overtime violations without reasonable inquiry and good faith belief that such violations exist." *Id.* at 25. The defendants, however, do not provide any authority that would authorize Rule 11 sanctions on the facts of this case, nor am I aware of any such authority.

Rule 11 does not exist to punish overstatement or isolated factual errors by counsel. *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010) (citations omitted). Indeed, "[a] statement of fact can give rise to the imposition of sanctions only when the 'particular allegation is utterly lacking in support.'" *Id.* at 81 (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003)). I find the discrepancy between the sworn affidavit of one of the Midtown opt-in plaintiffs and her subsequent deposition

testimony to be concerning.[13] Nonetheless, a single discrepancy of this nature is simply not sufficient to impose sanctions. Moreover, even if this conduct rose to the level of conduct punishable by Rule 11, I would exercise my discretion not to impose sanctions. *See DeSilva*, 27 F. Supp. 3d at 332–33 (declining to impose sanctions in a case involving allegations of systemic and far-reaching contradictions between plaintiffs' affirmations and their deposition testimony because "the allegedly false statements and inaccuracies in Plaintiffs' affirmations . . . amounted to overstatements and partial inaccuracies").

Given that plaintiffs' counsel has extensive experience litigating employment law cases in this district, including class actions, and he has taken this case through the discovery process, I do not find that this discrepancy provides a reason to deny him appointment as class counsel either. I therefore appoint John Troy and the Troy Law Firm as class counsel in this action.

## CONCLUSION

For the foregoing reasons, the defendants' motion to decertify the collective action is granted; the plaintiffs' cross-motion for final certification of this collective action is denied; and the plaintiffs' motion for class certification is denied as to the Midtown location, but granted as to the Flushing location. The individual and class claims of the opt-in plaintiffs are dismissed without prejudice.

_____/s/_____
Allyne R. Ross
United States District Judge


Dated:        April 2, 2018
              Brooklyn, New York

---

[13] *Compare* Aff. of Hui Qiu Chen in Supp. of Motion for Conditional Certification ¶¶ 5–10, ECF No. 71-4 (stating that she was paid a flat rate at the Midtown location and not told about minimum wage or overtime), *with* Hui Qiu Chen Dep. 32 (stating that she was paid overtime and her payroll record showed her hourly rate of pay), *and id.* at 41–48 (confirming that she signed payroll records showing her hourly pay and overtime pay and that these records were accurate), *and id.* at 49 (stating that the only basis for her claim that Joe's Shanghai owed her money was "I worked very long times there").