UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JIANMIN JIN,                                                                                    Case No. 16CV5633
                                                                                                         (ARR) (JO)

                                        Plaintiff,

        -against-                                                                                DECLARATION OF
                                                                                                         DAVID B. HOROWITZ
SHANGHAI ORIGINAL, INC. d/b/a Joe's Shanghai,                  IN OPPOSITION TO
EAST BROTHER CORP. d/b/a Joe's Shanghai,                         PLAINTIFF'S MOTION
ALWAYS GOOD BROTHERS, INC. d/b/a Joe's Shanghai,       FOR ATTORNEY'S FEES
SHANGHAI CITY CORP. d/b/a Joe's Shanghai,
SHANGHAI DUPLICATE CORP. d/b/a Joe's Shanghai,
KIU SANG SI a/k/a Joseph Si, MIMI SI, YIU FAI FONG
TUN YEE LAM and SOLOMON C LIOU,

                                        Defendants.
------------------------------------------------------------------------X

       David B. Horowitz, do hereby swear, affirm and attest as follows:

       1.    I am an associate of Fong & Wong, P.C., attorney for the Defendants in the above-captioned matter.  I make this Declaration in opposition to Plaintiff's motion for attorney's fees and costs.

       2.    This is a simple wage and hour claim under the FLSA and NYLL that was handled by five lawyers on behalf of the plaintiff and tried in one day by an attorney admitted to practice only 14 months.   Plaintiff Jin was employed as a kitchen worker in the Flushing restaurant from September 10, 2014 until May 2, 2015.  After trial, the Court rendered an opinion and order (Doc 190) and on July 19, 2019 entered judgment (Doc 191) in favor of Mr. Jin and against defendants East Brother Corp., Tun Yee Lam and You Fai Fong for a total of $35,880.30 consisting of unpaid overtime compensation, liquidated damages, statutory notice damages and prejudgment interest.[1]

       3.    On September 3, 2019 Troy Law, PLLC moved for attorney's fees in the amount of $211,074 and costs of $7,725.43.  Defendants oppose the motion.

---

[1] Defendants have paid the judgment including post-judgment interest in the total amount of $36,000.00.

1

**The Motion Is Late and There Is No Showing of Excusable Neglect**

4. Unless otherwise provided by statute or order of the court, a motion for attorney's fees must be filed no later than 14 days after entry of judgment, FRCP 54(d)(2)(B)(1). According to Rule 6(b)(1), a district court may for good cause extend certain deadlines if a request is made before the original time expires, or upon motion made after expiration of the specified period where the failure to act was the result of excusable neglect, FRCP (6)(b)(1).

5. The 14-day period following entry of judgment expired August 2, 2019. Troy Law did not request an extension of time before the expiration of the 14-day period. On August 20, 2019 – 18 days past the expiration period – Mr. Troy requested an extension of time for the reason given that "because we are currently hard at work to get a client of ours out of prison and it has consumed a lot of our energies and efforts to coordinate." I advised Mr. Troy that under Rule 54(d) his motion was already barred and that I would not consent to an extension of time. See emails exchanged between counsel on August 20, 2019 (Exhibit A).

6. There is no showing of good cause and certainly no showing of excusable neglect. Accordingly, the motion for attorney's fees should be denied in its entirety. See Tancredi v Metropolitan Life Insurance Company, 378 F.3d 220 (2nd Cir. 2004); Marchisotto v City of New York, No. 05 Civ. 2699(RLE), 2009 WL 2229695, (S.D.N.Y. July 27, 2009).

**Troy Agreed to an Attorney's Fee of One-Third of the Client's Net Recovery**

7. Mr. Troy and Troy Law PLLC should not be paid for legal services any more than he agreed to be paid – or any more than his client agreed to pay him – under his standard Legal Services Agreement with his labor law client. As to Mr. Troy's standard Legal Services Agreement with his labor law clients, see Doc 38.

8. Mr. Troy's standard Legal Services Agreement is written in English and Chinese. The English states, in part:

"5. Attorney's Fees. The amount Attorney will receive for attorney's fees for the legal services to be provided under this agreement will be: <u>percent (   )</u> of the Net Recovery, excluding the court awarded attorney's fees. It is specifically understood that all attorney fees awarded by the court or accrued by Attorneys are and shall remain the property of attorney."

6. Robert W. Wong, Esq., a partner of Fong & Wong, PC, speaks, reads and writes in Chinese. Mr. Wong read paragraph 5 of Mr. Troy's Legal Services Agreement (Doc 38) and translated the Chinese characters that state that the attorney's fees for the legal services to be provided under the agreement will be "1/3" of the net recovery. The Legal Services Agreement between Troy Law PLLC and the client provides that the attorney's fee will be a percentage of the net recovery. Whereas the English leaves the percentage blank, the Chinese specifies that the percentage is "1/3".

7. We have good reason to believe that plaintiff Jin signed Mr. Troy's standard Legal Services Agreement - or a substantially similar legal services agreement – in English and Chinese that provides for an attorney's fee to Mr. Troy and Troy Law PLLC equal to one-third of the net recovery.

8. Accordingly, based on the Legal Services Agreement, plaintiff should be awarded an attorney's fee of no more than one-third of the net recovery (1/3 of $36,000.00) or $12,000.00. This is the amount of the attorney's fee that plaintiff agreed to pay and his attorney agreed to accept for the legal services provided herein.

**Counsel Presented Misleading Claims of Collective Opt-Ins Resulting in Decertification of the Collective Action – Counsel Failed to Fairly and Adequately Represent the Interests of the Rule 23 Class Resulting in Prejudice to Class Members and Decertification of the Class – and Counsel Failed to Prevail in His Overriding Goals of Proving Single-Enterprise Liability Against Flushing, Midtown and Chinatown and Liability Against Founder Kiu Sang Si a/k/a Joseph Si**

9. Under both federal and state law a prevailing plaintiff in a wage-and-hour case may seek an award of reasonable attorneys' fees and costs. The most critical factor in determining the reasonableness of a fee award is the degree of success obtained, <u>Cho v Koam Medical</u>

Services P.C., 524 F.Supp.2d 202, 206 (E.D.N.Y. 2007).

10. Although generally there is a presumption that the lodestar figure represents a reasonable fee, i.e. the product of reasonable hours times a reasonable rate – that does not end the inquiry - other factors may result in an upward or downward departure from the lodestar amount, Cho v Koam Medical Services P.C., supra. at 210. The most critical factor in determining the reasonableness of a fee award is the degree of success obtained - if a plaintiff achieves only limited success, the lodestar amount may be excessive, Cho v Koam Medical Services P.C., supra. at 210.

11. Plaintiff and his attorney were not successful and failed to prevail on many claims. Plaintiff and his attorney failed on three occasions to obtain approval for a conditional collective action for the Chinatown Restaurant and suffered decertification of the conditional collective action for Midtown. Contrary to claims made that opt-in plaintiffs received a flat rate of pay without regard to minimum wage and overtime, Judge Ross found that six of the nine opt-ins testified at their depositions that they were paid at least the minimum wage plus overtime, they punched time cards every time they were paid, they received notices of pay rate and pay day and that the payroll records kept by Midtown were accurate (Doc 115, pp. 5 – 6). Judge Ross expressed "concern" about the discrepancy between the sworn affidavit of one of the Midtown opt-in plaintiffs and her subsequent deposition testimony (Doc. 115, pp. 28 – 29, n. 13). Clearly, counsel's failure to properly interview the opt-in plaintiffs – and counsel's misleading presentation of their claims - resulted in much unnecessary litigation and expense. These Midtown opt-in plaintiffs did not have even colorable claims under the FLSA. Counsel should not be awarded any fee for services relating to the unsuccessful collective action.

12. Plaintiff and his attorney failed to sustain the class of Flushing Restaurant employees due to counsel's failure to "fairly and adequately represent the interests of the class" resulting in

4

prejudice to class members and decertification of the class (Doc 181, pp.6 – 7).  Counsel failed to adequately represent the class in several respects.  First, although not mentioned in the Court's decision decertifying the class, counsel failed to publish notice of the class action in the newspaper despite authorization to do so from the Court – with cost of publication to be split between the parties (Doc 130).  Counsel's decision not to publish notice resulted in lack of notice to putative members of the class for whom mailing addresses were not available – thereby excluding such putative members from the class.  Second, counsel failed to conduct supplemental depositions of workers relating to counsel's claim that defendants inappropriately contacted class members and interfered with the formation of the class despite having leave to conduct dozens of such depositions.  Apparently, counsel decided not to spend a few hundred dollars to serve deposition subpoenas – although counsel claims he already spent over $7,000 in costs – and was demanding millions of dollars in damages from defendants on behalf of the class.  For more than a month, counsel failed to inform defendants or the Court of his decision not to pursue the supplemental depositions of class members or his previously filed motion for sanctions (Doc 181, p. 2).[2]  Third, during the pretrial phone conference, Counsel revealed that he planned to call only 2 class members as witnesses at trial – out of the final list of 38 class members.  This decision – the Court found – was contrary to the interests of the class (Doc 181, p. 6).  Counsel should not be awarded any fee for services relating to the unsuccessful class action.

13.  Plaintiff Jin and his attorney were unsuccessful and failed to prevail in any of their claims against Shanghai Original, Inc., Shanghai City Corp. and Shanghai Duplicate Corp.  Plaintiff was unsuccessful and failed to prevail in his claim of single enterprise liability against

---

[2] Mr. Troy now insinuates that 2 employees, Aragon Cardoso Cruz and Maximino Raymundo, have come forward to claim that Flushing's manager Dawson forced employees to sign opt-out forms.  Defendants are not aware of such claim and deny there is any truth to it and deny any wrongdoing on their part.  Defendants object to counsel's hearsay insinuation made "[u]pon information and belief" for the apparent purpose of casting dispersion upon defendants and attempting to justify his claim to an excessive and unreasonable attorney's fee.  Further, defendants are not aware of Cruz or Raymundo being Named Plaintiffs in any action against them at this time.

Flushing, Midtown and Chinatown. Despite the Court's previous finding that Flushing, Midtown and Chinatown were separately owned and managed and that each maintained its own employment policy (Doc. 115) – counsel insisted on going to trial on this non-issue and attempted to present rank hearsay and speculation as "evidence" of single enterprise liability. Counsel should not be awarded any fee for services relating to the unsuccessful and unnecessary attempt to prove single entity liability against Midtown and Chinatown.

14. Similarly, and blatantly, from the start plaintiff and his attorney were out to "get" founder Kiu Sang Si a/k/a Joseph Si because they believed Si had a deep pocket and that they could force him to pay an extortionate settlement. Plaintiff Jin with the assistance of his attorney alleged in the complaint that Si hired him (Doc 1, par. 26). This was a false allegation from its inception and they knew it – or should have known it. There was no evidence or testimony whatsoever to support this allegation. Yet, plaintiff and his attorney insisted on taking Si to trial if he would not agree to their outrageous settlement demands. Plaintiff and his attorney were unsuccessful and failed to prevail in any of their claims against defendant Si. They did not have even a colorable claim against Si. Counsel should not be awarded any fee for services relating to the unsuccessful claims against Si.

15. Finally, plaintiff Xie failed to appear for his deposition on numerous occasions and was precluded from testifying. Plaintiff Xie and his attorney were wholly unsuccessful and failed to prevail in any of Xie's claims against all defendants. Counsel should not be awarded any fee for services relating to the unsuccessful claims brought on behalf of plaintiff Xie.

**Troy Law's Hourly Rates Are Unreasonable**

16. The hourly rates sought by counsel are far above any rate claimed to have been awarded to his firm by any court in an FLSA action. Counsel do not possess the qualifications or experience that would justify the rates sought. Counsel does not claim that any paying client

has ever agreed to pay the extravagant rates he is seeking for this simple wage and hour action. This FLSA action required basic level knowledge and experience. Mr. Schweitzer was only admitted to the New York Bar 14 months when he tried this case.

17. With respect to John Troy, the principal of Troy Law, PLLC, the Southern District found an hourly rate of $300 appropriate for Mr. Troy in light of (1) rates typically commanded by similarly experienced partners in FLSA actions in the District, (2) the rates Troy himself has historically been awarded in FLSA cases in the District, and (3) the Court's finding that the unexceptional case was within the mainstream of legal work in such cases. Guo v Tommy's Sushi, Inc., 14 Civ. 3964 (PAE), 2016 WL 452319, at *5 (S.D.N.Y. Feb. 5, 2016). Accordingly, the court reduced Mr. Troy's rate to $300 per hour. Here too, the Court should reduce Mr. Troy's rate from $550 to $300.

18. George Byun a/k/a Kibum Byun was admitted to the New York Bar March 28, 2016 (not in 2015) (Exhibit B). Mr. Byun's level of experience was equivalent to a junior associate at best. In Guo v Tommy's Sushi, Inc., supra., the court approved a rate of $175 per hour for Troy associates admitted to the Bar in or after 2013 and $150 per hour for an associate admitted in 2014. Here too, the Court should reduce Mr. Byun's rate from $350 to $150 per hour.

19. As noted, Aaron Schweitzer was admitted to the New York Bar May 16, 2018 and was not admitted to the Bar during much of his work on this case in 2017. His work as a law student intern in 2017 should be compensated at rates similar to those charged by paralegals in the prevailing market. The rate approved for a Troy intern before admission to the Bar was $100 per hour in Guo v Tommy's Sushi, Inc., supra. As a freshly admitted first year associate, Mr. Schweitzer's rate should be no more than $150. Accordingly, the Court should reduce Mr. Schweitzer's rate from $350 to no more than $150 per hour for services rendered after his admission to the Bar, Guo v Tommy's Sushi, Inc., supra.

20. The rates charged for Luis Flores and Andrew Dellaripa should be reduced from $250 to no more than $150 per hour based on their level of qualification and experience.

21. The rates charged for Troy's paralegals should be reduced from $150 per hour to $100 per hour, Guo v Tommy's Sushi, Inc., supra.

**The Hours Expended by Plaintiff's Counsel Are Unreasonable**

22. Counsel's billing in connection with this matter is characterized by poor billing judgment, inefficiencies, redundancies and over-billing for the duration of this action.

23. First and foremost, there was no need for five attorneys and three paralegals to work on this simple, straightforward FLSA action. As Judge Engelmayer (citing Judge Cogan) explained in a recent FLSA action litigated by Troy Law, "[t]here is necessarily a learning curve anytime a new associate is introduced into a case, and the client should not have to pay for that," Guo v Tommy's Sushi, Inc., supra. at *6. "To account for these inefficiencies, and having considered the reductions applied in similar cases, the Court reduces the hours billed by Troy Law by 40%," Guo v Tommy's Sushi, Inc., supra. at *7.

24. It was unnecessary for Mr. Troy to bill at his rate for numerous hours of routine paralegal services such as unspecified Lexis Nexis research, website research, liquor license research, Yelp research, Acris property research, Biz entity database research and DMV research (Doc 197-1, p. 1).

25. There was no need for Mr. Troy to bill at his rate 5 hours to draft a straightforward FLSA complaint, 1 hour to file the complaint and then an additional 2.3 hours to finalize the complaint, request issuance of a summons and review the complaint (Doc 197-1, p. 1).

26. There was no need for Mr. Troy to bill for deed recording (Doc 197-1, p. 2). Mr. Troy billed successively .5 hours four times on August 21, 2017 to file consents for 4 opt-ins, Doc 197-1, p. 7. On the same day, Mr. Troy billed .95 hours discussing MCCC issues with an

unspecified person.

27. Billings for Mr. Byun, a newly admitted attorney, 7 hours to draft a simple motion for a default, for $2,450 is excessive (Doc 197-1, p. 2). Mr. Byun's 6.0 hours to prepare for an IPTC, attend an IPTC write a memo at $350 an hour for $2,275 is excessive, (Doc 197-1, pp. 2-3). His 1.5 hours to schedule a stenographer and interpreter is excessive, (Doc 197-1, p. 5). On September 15, 2017 Mr. Byun billed .33 hours for his own client's busted deposition plus 1.5 hours traveling to his office. On September 21, 2017 Mr. Byun charged 6 hours reviewing a damage calculation that his paralegal prepared the same day in 1.2 hours. On September 22, 2017 Mr. Byun billed 4.83 hours to prepare to mail and print the notice of pendency – clearly paralegal work – and clearly excessive. On January 19, 2018 Mr. Byun billed 6 hours revising and finalizing motion papers – which is a vague description of his services.

28. As noted, Mr. Schweitzer's billing at $350 per hour for phone calls and communications with our office and answering routine interrogatories in 2017 when he was an intern, is out of line for simple intern / paralegal work, (Doc 197-1, pp. 2 and 4). Mr. Schweitzer bills for 5 hours drafting an amended complaint that was never authorized, is improper (Doc 197-1, pp. 6 and 8). On August 27, 2017 Mr. Schweitzer billed 3 hours "drafting" plaintiffs' standard interrogatories – and another 3 hours "drafting" standard document requests. On September 28, 2017 Mr. Schweitzer billed 3 hours to draft a standard NYS complaint for the Chinatown clients – which has nothing whatsoever to do with this case. In May 2018 Mr. Schweitzer billed over 4 hours for services relating to publication of notice – that he never followed through with – since counsel never published class notice in a newspaper. On June 6, 2018 Mr. Schweitzer bills for train travel to / from court over an hour each way – clearly excessive and unnecessary. In January 2019 Mr. Schweitzer billed over 7 hours reviewing returned class notices and opt-outs for irregularities – editing a letter to the court - and researching how to file under seal - this is

9

excessive considering there were approximately 25 opt-outs – and there was no basis for any filing under seal.  On March 1, 2019 Mr. Schweitzer billed 2.5 hours to travel to and from and attend a brief conference.  On March 6, 2019 he billed 2.5 hours and 1.83 hours for unspecified "meet & conf + travel to and from."  On March 9, 2019 Mr. Schweitzer billed .67 hours to prepare subpoenas to managers and opt-out employees – as noted above, counsel subsequently failed to follow through with any depositions of opt-out employees.  On July 11, 2019 he billed 1 hour for an unspecified telephone conference.  On the same date, Mr. Schweitzer billed 2.17 hours drafting a letter regarding a disallowed claim of Hai Hua Zhai – which was not part of this case – and should not have been billed at all.

29. In May 2017 Mr. Schweitzer and his paralegal billed 3 hours for repeatedly attempting to adjourn a conference

30. On July 11, 2019 Mr. Troy and Mr. Schweitzer duplicate trial preparation of Mr. Jin although Mr. Troy did not participate in the trial.

31. In July 2019 Mr. Schweitzer billed for services related to an appeal of this Court's decision to decertify the Flushing class – which should not properly billed.  Nor should counsel bill for preparing and serving the notice of decertification.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's fee application, or alternatively, substantially reduce the rates charged and the hours billed by Troy Law, PLLC by at least 40% across the board, and apply the reduced hours on timekeepers' revised, reasonable hourly rates, to derive the appropriate attorney's fee award for Plaintiff's counsel.

I declare pursuant to 28 U.S.C. §1746 and under penalty of perjury that the foregoing is true and correct.  Executed this 6th day of September 2019 in New York, New York.

        s/ David B. Horowitz_____
David B. Horowitz, Esq., 1890
FONG & WONG, P.C.
Attorneys for Defendants
254 Canal Street, Suite 2002
New York, New York 10013
(212) 966-6668
dh@fwatty.com

11