UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                       :

JIANMIN JIN,                                        :

                          :

                  Plaintiff,                 :        16-cv-5633 (ARR) (JO)

                                       :

      -against-                       :        NOT FOR ELECTRONIC

                                       :        OR PRINT PUBLICATION

                                       :

SHANGHAI ORIGINAL, INC., et al.,         :        OPINION & ORDER

                                       :

                Defendants.              :

                                       :

-------------------------------------------------------------------- :

                                                        X

ROSS, United States District Judge:

       On June 29, 2020, I received a report and recommendation ("R&R") from the Honorable

James Orenstein, United States Magistrate Judge, awarding $57,818.55 in attorneys' fees and

$5,155.64 in costs to plaintiff Jianmin Jin ("Jin" or "plaintiff") and imposing sanctions on Jin's

attorneys for ethical violations. R&R 1, 7, ECF No. 213. On July 13, 2020, both Jin and defendants

timely objected. Defs.' Obj., ECF No. 214; Pl.'s Obj., ECF No. 215. Specifically, Jin argues that

the R&R underestimates his reasonable attorneys' fees by calculating the fees using an artificially

low hourly rate and excessively reducing the hours for which his attorneys are compensated. Pl.'s

Obj. 1–2. Furthermore, Jin argues that the R&R excludes compensable costs and inappropriately

recommends that I impose sanctions on his attorneys. *Id.* at 3. Defendants object to the R&R in its

entirety, contending that Jin's motion for attorneys' fees was untimely filed and should be

summarily denied. Defs.' Obj. 1–2. In the alternative, they argue that Judge Orenstein erred by

awarding fees associated with plaintiffs' unsuccessful legal strategies, including failed attempts to

certify collective and class actions. *Id*. at 2–6. Additionally, they argue that the R&R should have

deducted an amount equivalent to one-third of Jin's damages from the attorneys' fee award to account for an alleged contingency agreement between Jin and his attorneys. *Id*. at 2–3.

After conducting a *de novo* review, I agree with Judge Orenstein's determination that Jin's attorneys' fees application was untimely but meets the excusable neglect standard and should be considered on the merits. I also agree that the hourly rates requested by Jin's attorneys were excessive and accept Judge Orenstein's calculations as to the new rates. I opt to reduce, however, the compensable hours attributed to Jin's attorneys because Jin was the only prevailing plaintiff in this action. Finally, I decline to impose disciplinary sanctions at this time.

## BACKGROUND

Jin and co-plaintiff Chunyou Xie ("Xie") brought putative collective and class action claims on behalf of themselves and others similarly situated under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), alleging that defendants[1] violated state and federal minimum wage and overtime laws at three restaurants in Flushing, Queens, Midtown Manhattan, and Chinatown. *See generally* Compl., ECF No. 1; *see also* 29 U.S.C. § 201, *et seq.*; NYLL §§ 190, 650, *et seq.* All three restaurants operated under the name "Joe's Shanghai" but were independently owned and managed during the relevant time period. *See* Opinion & Order, Apr. 2, 2018 ("April O&O") 2, ECF No. 115. Jin and Xie were employees at Joe's Shanghai's Flushing location. Compl. ¶¶ 7–8.

Contending that the three restaurants constituted a single enterprise under the wage and hour laws, plaintiffs expended considerable effort in their attempts to certify a collective action across the three locations. *See* April O&O 7–8 (indicating that plaintiffs moved three times to

---

[1] Shanghai Original, Inc., East Brother Corp. ("East Brother"), Always Good Brothers, Inc., Shanghai City Corp., Shanghai Duplicate Corp., Kiu Sang Si, Mimi Si, Yiu Fai Fong ("Fong"), Tun Yee Lam ("Lam"), and Solomon C. Liou (collectively, "defendants").

certify a collective action at the three restaurant locations and twice more to expand the conditional certification to Chinatown); *see also, e.g.*, Pls.' Mot. to Certify FLSA Collective Action, ECF No. 44; Pls.' Mot. to Certify FLSA Collective Action, ECF No. 71; Pls.' Mot. to Certify FLSA Collective Action and Rule 23 Class Action, ECF No. 100. Nine plaintiffs opted into the collective action, only one of which worked at the Flushing location. April O&O 4. Ultimately, I determined that the restaurants were not a single enterprise, certified a class of non-managerial employees at the Flushing-based restaurant only, and appointed plaintiffs' attorney John Troy and the Troy Law Firm as class counsel. *Id.* at 8–20, 28–29.

After discovery concluded and before trial, plaintiffs moved to sanction defendants and reopen discovery, alleging that they had improperly contacted class members and interfered with the formation of the class. *See* Pls.' Notice of Mot. to Annul Class Opt-Outs or Alternatively Reopen Discovery, ECF No. 147. Although Judge Orenstein reopened discovery to allow plaintiffs to investigate the alleged misconduct, the Troy Law Firm did not complete its investigation and abandoned the sanctions claim. Min. Entry, May 10, 2019, ECF No. 160; Order, May 10, 2019. Additionally, they repeatedly failed to adequately respond to the court's orders, attempted to reschedule the trial date twice, and revealed on the eve of trial that they only planned to call two class members as witnesses. *See* Opinion & Order, July 10, 2019 ("Decertification O&O") 6, 6 n.7, ECF No. 181. In light of this pattern of incompetency, I decertified the Flushing class due to inadequate representation. *Id.* at 7. Additionally, Xie's claims were dismissed without prejudice due to his lack of employment records and preclusion from testifying at trial. *See* Opinion & Order, July 19, 2019 ("July 19, 2019 O&O") 1 n.1, ECF No. 190. Thus, only Jin's FLSA and NYLL claims proceeded to trial. *Id.*

Jin prevailed on his claims against defendants East Brother, Lam, and Fong. *Id.* at 13. On July 19, 2019, I entered judgment against those defendants jointly and severally, awarding Jin "(1) $11,184.23 in unpaid overtime compensation; (2) $11,184.23 in liquidated damages; (3) $8,945 in statutory notice violations; and (4) pre- and post-judgment interest." *Id.* On September 3, 2019, forty-six days later, Jin filed a motion seeking $211,074.83 in attorneys' fees and $7,725.43 in costs. Mot. for Att'ys' Fees ("Att'ys' Fees Mot."), ECF No. 196; Decl. in Supp. of Mot. for Att'ys' Fees ("Troy Decl.") ¶ 60, ECF No. 197; Mem. in Supp. of Mot. for Att'ys' Fees ("Pl.'s Br."), ECF No. 198. Defendants opposed the motion. Decl. in Opp. to Mot. for Att'ys' Fees ("Horowitz Decl."), ECF No. 200. By order dated September 5, 2019, I referred the motion to Judge Orenstein. Order Referring Mot., ECF No. 199. On June 29, 2020, I received Judge Orenstein's report and recommendation proposing an award of $57,818.55 in attorneys' fees and $5,155.64 in costs. R&R 1. Both parties filed timely objections.

## LEGAL STANDARD

When reviewing a magistrate judge's report and recommendation, I "'adopt those portions of the report to which no objections have been made and which are not facially erroneous.'" *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting *Walker v. Vaughan*, 216 F. Supp. 2d 290, 291 (S.D.N.Y. 2002)); *see also* Fed. R. Civ. P. 72 advisory committee's notes to subdivision (b). However, if a party files timely objections, I must "conduct a *de novo* review of any contested sections of the report." *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 222 F. Supp. 3d 169, 174 (E.D.N.Y. 2016), *vacated on other grounds*, 909 F.3d 519 (2d Cir. 2018); *see* 28 U.S.C. § 636(b)(1). Ultimately, I must "'arrive at [my] own, independent conclusion about those portions of the magistrate's report to which objection is made.'" *Silge v. Merz*, No. 05-CV-3648 (GBD), 2006 WL 39632, at *1 (S.D.N.Y. Jan. 6, 2006) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985)), *aff'd*, 510 F.3d 157 (2d Cir. 2007). "[I]t is well-established

4

in this district and circuit that a district court generally will not consider new arguments raised for the first time in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 51 (E.D.N.Y. 2015) (citing *Pizarro v. Gomprecht*, No. 10-CV-4803 (KAM) (LB), 2013 WL 990997, at *2 n.1 (E.D.N.Y. Mar. 13, 2013), and *Illis v. Artus*, No. 06-CV-3077 (SLT) (KAM), 2009 WL 2730870, at *1 (E.D.N.Y. Aug. 28, 2009)).

## DISCUSSION

### I.     Timeliness

Jin's application for reasonable attorneys' fees was untimely, but as the delay was the result of excusable neglect, I agree with Judge Orenstein that the application should be considered on the merits. *See* R&R 3–4.

Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure states that "'[u]nless otherwise provided by statute or *order of the court*, [a] motion [for attorneys' fees] must be filed and served no later than 14 days after entry of judgment.'" *Tancredi v. Metropolitan Life Ins. Co.*, 378 F.3d 220, 226 (2d Cir. 2004) (quoting Fed. R. Civ. P. 54(d)(2)(B)) (emphasis in original). This is not a "fatal jurisdictional deadline[,]" however. *Id.* at 227. "According to Rule 6(b)(2), . . . a district court may extend certain deadlines 'upon motion made after expiration of the specified period . . . where the failure to act was the result of *excusable neglect*.'" *Id.* at 226 (quoting Fed. R. Civ. P. 6(b)(2)) (emphasis in original).

"'[E]xcusable neglect' is an 'elastic concept,' that is 'at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission[.]'" *Id.* at 228 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392, 395 (1993)) (internal citations omitted). "To determine whether a party's neglect is excusable, a district court should take into account: '[1][t]he danger of prejudice to the [opposing party], [2] the length of the delay

5

and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was in the reasonable control of the movant, and [4] whether the movant acted in good faith.'" *Id.* (quoting *Pioneer*, 507 U.S. at 395); *see also ComLab, Corp. v. Kal Tire*, No. 17-CV-1907 (PKC) (OTW), 2019 WL 2144307, at *2 (S.D.N.Y. Apr. 18, 2019) (applying *Pioneer* factors to evaluate excusable neglect); *Whelan v. Pascale*, No. 13-CV-6998 (JFB)(AKT), 2016 WL 807373, at *4 (E.D.N.Y. Mar. 2, 2016) (same). In general, "[a]n attorney's failure to follow clear and unambiguous procedural rules does not usually constitute excusable neglect," but exceptions to that general principle may be warranted. *Latin America Finance Grp., Inc. v. Pareja*, No. 04-CV-10082 (DLC), 2007 WL 1009506, at *1 (S.D.N.Y. Apr. 2, 2007).

In the instant case, I entered judgment in favor of Jin on July 19, 2019, but he failed to file a motion for attorneys' fees and costs until September 3, 2019, forty-six days later. July 19, 2019 O&O 13; Att'ys' Fees Mot. As his fee application was due on August 2, 2019, his application was approximately one month late. He did not request a deadline extension from this court prior to filing his application. Rather, he argues that his delay is justified by good cause, as the Troy Law Firm was focused on mailing Decertification Notices to the Flushing class members, appealing my decision to decertify the Flushing class, and representing an incarcerated client through July and August, 2019. Pls.' Reply in Supp. of Att'ys' Fees Mot. 2–4, ECF No. 201.

Ultimately, the delay was relatively short and defendants did not assert that they were prejudiced by it. *See* Defs.' Obj. 1–2; Horowitz Decl. ¶¶ 4–6; *see also Zouvelos v. Surety Financial of America, Inc.*, 16-CV-1851 (AMD) (RLM), 2018 WL 1283684, at *2–3 (E.D.N.Y. Mar. 13, 2018) (finding excusable neglect applied to attorneys' fees motion filed approximately one month after judgment when there was no prejudice to defendants and movant misinterpreted court order); *Brown v. City of New York*, No. 11-CV-1068 (AJN), 2014 WL 896737, at *2 (S.D.N.Y. Feb. 27,

6

2014) (finding excusable neglect and considering untimely application on the merits where there was no evidence that defendants would be prejudiced and the delay of seven days was "not significant").

Defendants argue that because "[t]he 'pivotal determinant' of excusable neglect is the reason for the delay in light of the movant's good faith efforts and whether the circumstances were within the movant's reasonable control[,]" *Marchisotto v. City of New York*, No. 05-CV-2699 (RLE), 2009 WL 2229695, at *4 (S.D.N.Y. July 27, 2009) (quoting *Cardona v. City of New York*, No. 04-CV-955 (GEL), 2007 WL 690126, at *3 (S.D.N.Y. Mar. 7, 2007)), Jin cannot show excusable neglect and his motion must be denied, *see* Defs.' Obj. 1. Although the reason for the delay is a central consideration to a finding of excusable neglect, the Second Circuit in *Tancredi* made clear that the district court should weigh all four factors in the context of "all relevant circumstances surrounding the . . . omission[.]" 378 F.3d at 228. In *Marchisotto*, the district court found no excusable neglect where the movant missed the filing deadline by "well over a year[,]" a much longer delay than is evidenced in the instant case, and where the delay prevented defendants from "making any argument about attorneys' fees [on] appeal." 2009 WL 2229695, at *4. Here, Jin's justifications for missing the procedural deadline are undoubtedly flimsy; nevertheless, considering the lack of prejudice experienced by defendants and the relatively short delay, I find that the equities weigh in favor of considering Jin's motion on the merits.

## II.   Attorneys' Fees Calculation

As a prevailing plaintiff under the FLSA and NYLL, Jin may recover reasonable attorneys' fees and costs from defendants. *See* 29 U.S.C. § 216(b); N.Y. Labor Law § 663(1) (McKinney's

2020).[2] The burden is on Jin, as the party seeking reimbursement of attorneys' fees, to "'demonstrate the reasonableness and necessity of hours spent and rates charged.'" *Kindle v. Dejana*, 308 F.Supp.3d 698, 703 (E.D.N.Y. 2018) (quoting *Finkel v. Omega Comm'n Svcs., Inc.*, 543 F.Supp.2d 156, 164 (E.D.N.Y. 2008)).

"Both the Second Circuit and the Supreme Court have held that 'the lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee.'" *Id.* (quoting *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). "Generally, courts should determine the 'presumptively reasonable fee' by looking to 'what a reasonable paying client would be willing to pay.'" *Id.* (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2007)). After determining the presumptively reasonable fee, the court should consider case-specific factors to determine if the fee is reasonable, such as the case's complexity, the resources expended to prosecute the case, and other returns that the attorney expects to gain from the representation. *Id.*; *see also Lilly v. City of New York*, 934 F.3d 222, 232 (2d Cir. 2019) (reaffirming that district courts have "'considerable discretion'" in determining reasonable attorneys' fees and should consider all relevant case-specific variables (quoting *Arbor Hill*, 522 F.3d at 190)).

I agree with Judge Orenstein's determination of the attorneys' hourly rates and his decision not to deduct the alleged contingency fee award from Jin's fees. As Jin was the sole prevailing

---

[2] "Although the FLSA fee-shifting provision does not expressly mention 'prevailing party,' courts in the Second Circuit typically cite and rely upon prevailing party fee-shifting jurisprudence when adjudicating requests for attorneys' fees and costs under the FLSA." *Callari v. Blackman Plumbing Supply Inc.*, 11-CV-3655 (ADS) (AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020) (collecting cases). "In applying prevailing party fee-shifting jurisprudence to the FLSA, courts in the Second Circuit have consistently held that '[u]nder the FLSA and the NYLL, *a prevailing plaintiff* is entitled to reasonable attorneys' fees and costs.'" *Id.* (quoting *Fisher v. SD Protection Inc*, 948 F.3d 593, 600 (2d Cir. 2020)) (collecting cases) (emphasis in original).

plaintiff in this action, however, I further decrease plaintiff attorneys' compensable hours and, accordingly, the total fees awarded.

### A. Judge Orenstein correctly determined that Jin requested excessively high hourly rates and adjusted them accordingly.

The R&R appropriately concluded that the hourly rates requested by Jin's attorneys and staff were excessive and recommended reduced hourly rates, consistent with this district's standards. R&R 6–8. Accordingly, I adjust the hourly rates as follows:

| Professional | Hours Rate | |
|--------------|------------|----------|
| | Claimed | Adjusted |
| Troy | $550 | $375 |
| Byun | $350 | $150 |
| Schweitzer | $350 | $150 |
| Flores | $250 | $150 |
| Dellaripa | $250 | $100 |
| Beck | $150 | $100 |
| Killaru | $150 | $75 |
| Huang | $150 | $75 |

*See* Pl.'s Br. 6–9; Troy Decl. ¶¶ 27, 39, 43, 49–56, 58; R&R 7–8.

"A reasonable rate is the rate that a 'reasonable, paying client would be willing to pay.'" *Barella v. Village of Freeport*, 43 F. Supp. 3d 136, 189 (E.D.N.Y. Aug. 28, 2014) (quoting *Arbor Hill*, 522 F.3d at 184, 190). To determine a reasonable hourly rate, "courts in this Circuit generally adhere to the forum rule, which states that a district court should generally use the prevailing hourly rates in the district where it sits." *Kindle*, 308 F. Supp. 3d at 703–04 (citing *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 644 (2018)) (additional citations omitted); *see Deferio v. City of Syracuse*, No. 16-CV-361 (LEK) (TWD), 2018 WL 3069200, at *3 (N.D.N.Y. June 21, 2018). "In the Eastern District of New York, prevailing rates range from $300 to $400 per hour for experienced attorneys, $200 to $300 per hour for senior associates, and $100 to $150 per hour for junior associates." *Callari v. Blackman Plumbing Supply Inc.*, No. 11-

9

CV-3655 (ADS) (AKT), 2020 WL 2771008, at *9, *11 (E.D.N.Y. May 4, 2020) (assigning hourly rate of $380 to partner, $200 and $150 to two associates, and $70 to paralegal in FLSA collective and class action case), *report and recommendation adopted by* 2020 WL 2769266 (E.D.N.Y. May 28, 2020).[3] "'Some judges have recognized slightly higher ranges in this district of $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates.'" *Id.* at *10 (collecting cases); *see also Rodriguez v. Yayo Rest. Corp.*, No. 18-CV-4310 (FB) (PK), 2019 WL 4482032, at *8 (E.D.N.Y. Aug. 23, 2019).

As Judge Orenstein explains, the hourly rates assigned in the R&R are consistent with recent decisions in this district as to Troy and the Troy Law Firm. R&R 6. For example, Judge Tomlinson recently awarded an hourly rate of $375 to Troy, $150 to Schweitzer, and $160 to Byun in a similar FLSA / NYLL case that proceeded to trial. *See Singh v. A&A Market Plaza, Inc.*, No. 15-CV-7396 (AKT), 2019 WL 4861882, at *11 (E.D.N.Y. Sept. 30, 2019); *see also Xie v. Sakura Kai Inc.,* No. 17-CV-7509 (ILG) (JO), 2020 WL 4587473, at *2 (E.D.N.Y. Mar. 12, 2020) (awarding hourly rates of $375 for Troy, $150 for Schweitzer, $150 for Byun, and $75 for Huang and Kilaru), *report and recommendation adopted by* 2020 WL 2569406 (E.D.N.Y. May 20, 2020); *Hui Luo v. L & S Acupuncture, P.C.*, No. 14-CV-1003 (BMC), 2015 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015) (assigning Troy an hourly rate of $300 approximately five years ago, explaining that the trial was "very rough in terms of demonstrating Mr. Troy's ability to formulate questions according to the rules of evidence, and the theories advanced, for the most part, were not the basis on which [the court] decided the case"). Considering the nature of this action, the attorneys'

---

[3] Jin objects that the standard EDNY rates cited in the R&R are outdated and too low. Pl.'s Obj. 1–2; R&R 6 (explaining that "[c]ourts in this district typically award fees in comparable cases using the following hourly rates: $300–$400 for partners, $200–$325 for senior associates, $100–$150 for junior associates, and $70–100 for non-attorney professionals"). As evidenced here, the R&R's estimates are consistent with current case law.

relative experience levels, and the inadequate representation that plagued portions of this litigation,

I agree with Judge Orenstein's reduced hourly rates and adopt them here.

### B. The fee award should be reduced to account for abandoned and inadequate litigation and the plaintiffs' limited success.

In the instant R&R, Judge Orenstein rejected defendants' argument that the court should

not award attorneys' fees relating to the decertified Flushing class, Horowitz Decl. ¶ 12, the failed

Chinatown and Midtown collective actions, *id.* ¶ 11, claims against defendants found not liable at

trial, *id.* ¶ 13–14, and Xie's failed claims, *id.* at ¶ 15. *See also* Defs.' Obj 3–6. Rather, he concluded

that

> The court would have no reason to deprive Jin of reimbursement for some of his
> counsel's efforts simply because some of them failed. Thus, [Judge Orenstein]
> respectfully recommend[ed] that the court reject the defendants' argument to deem
> non-compensable the time Jin's counsel spent seeking certification of a class that
> included the defendants' employees at other restaurants who were not within the
> Flushing Class. Those efforts failed on the merits, rather than because of counsel's
> inadequacy, and are therefore properly compensable. For the same reason, the court
> should reject the defendants' request to reduce the fee award based on Jin's failure
> to prevail against some defendants or because Xie did not prevail on any claims.
> Despite the overall mixed result, Jin achieved success on his FLSA and NYLL
> claims.

R&R 9 (citations omitted). He excluded certain fees, however, relating to "litigation that Jin

effectively abandoned midstream[,]" including Jin's uninvestigated and withdrawn sanctions

motion, attempts to delay trial for the Flushing Class a second time, revisions to a two-person

witness list, decertification notices relating to the Flushing class, and appealing the decertification

order. *Id.* 9–10.

I agree with Judge Orenstein's conclusion that these efforts are properly excluded from

Jin's reasonable attorneys' fees. *See Hargroves v. City of New York*, Nos. 03-CV-1668 (RRM)

(VMS), 03-CV-3869 (RRM) (VMS), 03-CV-5323 (RRM) (VMS), 03-CV-4646 (RRM) (VMS),

2014 WL 1270585, at *13–14 (E.D.N.Y. Jan. 6, 2014) (acknowledging that a court may deny fees

for unreasonable or abandoned motions) (citing *Rozell v. RossHolst*, 576 F. Supp. 2d 527, 538 (S.D.N.Y. 2008)). I find, however, that an across-the-board reduction in compensable hours is warranted to account for Xie's failed claims and the decertification of the Flushing class and Midtown and Chinatown collective actions. *See Konits v. Karahalis*, 409 F. App'x 418, 422 (2d Cir. 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983) (noting district court's discretion to "attempt to identify specific hours that should be eliminated, or [to] . . . simply reduce the award to account for [plaintiffs'] limited success.")). I do not deduct for the failure to establish liability to Jin for certain defendants at trial. *See* Defs.' Obj. 5–6; *Rozell*, 576 F. Supp. at 538 ("[A] court should not disallow fees for every motion that a prevailing party did not win. Reasonable paying clients may reject bills for time spent on entirely fruitless strategies while at the same time paying their lawyers for advancing plausible though ultimately unsuccessful arguments.").

Both the Supreme Court and the Second Circuit have observed that "'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). In *Barfield*, the Second Circuit held that a district court did not abuse its discretion in reducing attorney's fees by 50% "to account for plaintiff's failure to secure collective action certification." *Id.* at 136. It explained that that the plaintiff obtained only a "small degree of success" although she prevailed on her individual FLSA claims, but counsel failed to certify a collective action for thousands of other employees. *Id.* at 152. Accordingly, "the reasonableness of the attorney's fees incurred linked directly to the ability to maintain the case as an FLSA collective action." *Id*.

"'Hours spent on unsuccessful fee-shifting claims . . . must be excluded from the reasonable hours spent on the case when calculating the lodestar.'" *Williams v. Epic Security Corp.*, 368 F. Supp. 3d 651, 656 (S.D.N.Y. 2019) (quoting *Millea*, 658 F.3d at 168 and citing *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (excluding "hours dedicated to severable unsuccessful claims")). Attorneys' fees may be awarded for unsuccessful claims as well as successful ones, however, where they are "'inextricably intertwined and involve a common core of facts or are based on related legal theories.'" *Id.* (quoting *Quaratino*, 166 F.3d at 425 (internal quotation marks and citations omitted)). Although I need not reduce the fee award for every unsuccessful motion over the course of a litigation, *see Kim v. 511 E. 5th St., LLC*, No. 12-CV-8096 (JCF), 2016 WL 6833928, at *7 (S.D.N.Y. Nov. 7, 2017), "[g]enerally, 'the denial of a class or collective action certification motion justifies a reduction in fees, given the impact that such certification may have on the quantity and quality of the available relief.'" *Callari*, 2020 WL 2771008, at *15 (quoting *Siegel v. Bloomberg L.P.*, No. 13-CV-1351, 2016 WL 1211849, at *10 (S.D.N.Y. Mar. 22, 2016) (citing *Barfield*, 537 F.3d at 152)).

"Courts in this Circuit have recognized a district court's authority to make across-the-board percentage cuts in hours, as opposed to an item-by-item approach, to arrive at the reasonable hours expended." *Williams*, 368 F. Supp. 3d at 656–57 (collecting cases); *see also Cruz v. Space NY 50th St LLC*, No. 17-CV-4936 (JLC), 2019 WL 4061492, at *4–5 (S.D.N.Y. Aug. 28, 2019). To determine the percentage deduction, a district court need not serve as a "green-eyeshade accountant[,]" but "may take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Williams*, 368 F. Supp. 3d at 661.

In *Williams*, the district court adjusted plaintiffs' attorneys' compensable hours to reflect "the number of prevailing Plaintiffs" and "the fact that even the prevailing Plaintiffs were not

successful on all their claims." *Id.* at 660. Noting the impossibility of determining the percentage of time spent on prevailing plaintiffs and claims, as opposed to those that failed, the court in its discretion implemented a 66% reduction in hours for two attorneys and a 70% reduction for another. *Id.* at 661–62; *see also Cruz*, 2019 WL 4061492, at *6–7 (reducing requested hours by 35% because only two of the four plaintiffs obtained a judgment in their favor and one plaintiff obtained a limited degree of success at trial, but recognizing that a 50% reduction was inappropriate because "'some work done on behalf of the non-prevailing [p]laintiffs was required for the prevailing [p]laintiffs to win'" (quoting *Williams*, 368 F. Supp. 3d at 661)).

Relatedly, in *Callari*, the court found that "an across-the-board reduction of 45% of the hours billed by Plaintiffs' counsel [was] warranted" where plaintiffs' attorneys exhibited poor billing judgment and failed to certify a putative class action, although they succeeded in obtaining a conditional certification of a collective action. 2020 WL 2771008, at *1, *14–16, *17 (awarding attorneys' fees of $168,032.70 following a $264,400 settlement in favor of named plaintiff and opt-in plaintiffs in an FLSA action). Because only opt-in plaintiffs could recover in the absence of a class certification under Rule 23, their failed motion "significantly reduc[ed] Plaintiffs' possible recovery as compared to what might have been recovered if class certification had been granted." *Id.* at *15.

In the instant case, Jin, one of the two named plaintiffs on the complaint, prevailed on his claims against three of the ten identified defendants. *See* Compl. 1; July 19, 2019 O&O 13. Jin obtained a reasonable amount of success at trial, receiving a damages award of over thirty thousand dollars. July 19, 2019 O&O 13. Jin's attorneys did not, however, obtain a collective or class action judgment relating to any of the three restaurants. *See id.*; April O&O 7–8; Decertification O&O

14

6–7. Nine opt-in plaintiffs, one of whom was associated with the Flushing location of Joe's Shanghai, received no recovery as a result of this action. *See* April O&O 4–5.

The R&R excluded approximately 10% of the attorneys' claimed hours due to abandoned and inadequate litigation associated with the decertified Flushing class and sanctions motion. *See* R&R 12 (reducing hours worked from 689.58 to 626.12). I find that this reduction is appropriate. In addition, "[t]aking all the foregoing into account, and considering other case-specific variables," *Williams*, 368 F. Supp. 3d at 662, I find that a further reduction of 20% to account for the firm's limited success in certifying collective actions across the three restaurants, maintaining the Flushing class action, and pursuing Xie's claims is appropriate.

### C. An additional 40% blanket reduction of billable hours for poor billing practices is appropriate.

Plaintiffs object that Judge Orenstein's across-the-board reduction of 40% is excessive and unwarranted by the quality of plaintiff's billing records. Pl.'s Obj. 3–4; *see* R&R 10–12. Because I find that plaintiff's attorneys' billing records frequently are vague and redundant and reflect overstaffing and poor billing judgment, I adopt Judge Orenstein's recommendation.

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise 'billing judgment' with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437 (internal citations omitted).

> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . .

15

*Id.* at 434 (citing *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)) (internal citations omitted); *see also Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009). The district court has discretion, based on its "'familiarity . . . [and] experience with the case'" and the parties' submissions, to impose an "'across-the-board percentage deduction [to plaintiff's claimed hours]'" if it determines that the hours are excessive, redundant, or unnecessary. *Gortat v. Capala Bros.*, No. 07-CV-3629 (ILG), 2014 WL 3818614, at *5 (E.D.N.Y. Aug. 4, 2014), *aff'd in part and vacated in part*, 621 F. App'x 19 (2d Cir. 2015) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992), then quoting *Manzo v. Sovereign Motor Cars, Ltd.*, No. 08-CV-1229 (JG) (SMG) 2010 WL 1930237, at *8 (E.D.N.Y. May 11, 2010)) (citing *Gagasoules v. MBF Leasing LLC*, 296 F.R.D. 107, 110–11 (E.D.N.Y. 2013)). "[C]ourts routinely apply [such] reductions for vague entries, imposing 'reductions as high as 40% based solely on vague billing entries.'" *Reiter v. Maxi-Aids, Inc.*, No. 14-CV-3712 (SJF) (GRB), 2019 WL 1641306, at *5, *6 (E.D.N.Y. Apr. 16, 2019) (quoting *Anderson v. Cty. of Suffolk*, No. 09-CV-1913 (GRB), 2016 WL 1444594, at *6 (E.D.N.Y. Apr. 11, 2016)) (imposing a 30% reduction to account for overstaffing and vague billing entries).

Poor billing practices are evident in the instant case. For example, John Troy frequently billed for tasks that should have been handled by a less-experienced lawyer or support staff. *See* Pls.' Billing Invoice ("Billing Recs.") 1, ECF No. 197-1 (indicating that Troy billed 0.4 hours for "Research: ABC Board on Liquor Licenses[]," 2.25 hours for "Defendant Website Research: Yelp/ Grubhub/ MenuPages/ Delivery.com/ FB/web," and 4.5 hours for "Research: Search Corp & Biz Entity Database"); *see also Callari*, 2020 WL 2771008, at *12–13 (reducing fee award because, among other reasons, partner consistently "bill[ed] at a partner's rate for tasks that could have and should have been performed by an associate or even clerical staff."). The billing records

demonstrate overbilling for routine tasks, as well, including five hours attributed to John Troy to draft the FLSA complaint, one hour filing it, 0.90 hours finalizing it, and 0.80 hours reviewing it. Billing Recs. 1. Attorney Byun billed three hours for drafting a certificate of default, 2.80 hours to draft an affirmation support request for default, and an additional hour to draft the notice of motion and certificate of default. *Id.* at 2. Plaintiffs billed for inappropriate tasks, such as drafting an amended complaint that the court did not authorize. *Id.* at 6; R&R 11. Several entries are vague, making it difficult to evaluate the reasonableness of the charge. *See, e.g.,* Billing Recs. 19 (indicating that Schweitzer spent 9.19 hours "review[ing] case" and Troy spent 8.00 hours "Confer[ing] Name List for Upcoming Trial"). In light of these billing practices and my experience with the Troy Law Firm over the course of this case, I find that an additional across-the-board reduction of the hours claimed by 40% is appropriate. *See, e.g., Kim*, 2016 WL 6833928, at *5–7 (reducing attorney hours by 40% where billing records reflected mis-staffing, overstaffing, vague billing entries, excessive time billed for routine tasks, and computational errors).

As a result, I award attorneys' fees in the total amount of $31,481.70 as summarized in the following chart:

| Professional | Hours Rate | | Hours Worked | | Adjusted Fee Adjusted Fee |
|---|---|---|---|---|---|
| | Claimed | Adjusted | Claimed | Remainder Reduced 70% | |
| Troy | $550 | $375 | 72.44 | 21.73 | $8,149.50 |
| Byun | $350 | $150 | 181.42 | 54.42 | $8,163.90 |
| Schweitzer | $350 | $150 | 200.77 | 60.23 | $9,034.65 |
| Flores | $250 | $150 | 4.25 | 1.28 | $191.25 |
| Dellaripa | $250 | $100 | 18.00 | 5.4 | $540.00 |
| Beck | $150 | $100 | 82.22 | 24.67 | $2,466.60 |
| Killaru | $150 | $75 | 33.11 | 9.93 | $744.98 |
| Huang | $150 | $75 | 97.37 | 29.21 | $2,190.83 |
| TOTAL | | | 689.58 | 206.87 | $31,481.70 |

**D. I decline to deduct the alleged contingency fee award from Jin's reasonable attorneys' fees.**

Defendants argue that the R&R should have deducted one-third of Jin's damages award, approximately $12,000, from Jin's reasonable attorneys' fees. Defs.' Obj. 2–3. Citing the Troy Law Firm's "standard Legal Services Agreement[,]" defendants state that "[w]e have good reason to believe that plaintiff Jin signed Mr. Troy's standard Legal Services Agreement – or a substantially similar legal services agreement - . . . that provides for an attorney's fee to Mr. Troy and Troy Law PLLC equal to one-third of the net recovery." Horowitz Decl. ¶ 7. Notably, the excerpted portion of the agreement cited by defendants leaves the percentage of net recovery to which Troy Law would be entitled blank. *See id.* ¶ 6.[4] On that questionable basis, defendants maintain that I should deduct a corresponding amount from Jin's reasonable attorneys' fees to prevent a "windfall." Defs.' Obj. 3. This argument is unavailing.

As a preliminary matter, the argument that Jin's reasonable attorneys' fees should be reduced by $12,000 was not raised before Judge Orenstein in the first instance. Horowitz Decl. ¶¶ 7–8 (arguing only that attorneys' fees should be capped at one-third of Jin's total recovery). I need not consider arguments raised for the first time in a party's objection to an R&R. *Charlot*, 97 F. Supp. 3d at 51 (citing *Pizarro*, 2013 WL 990997, at *2 n.1 and *Illis*, 2009 WL 2730870, at *1). Regardless, I find that defendants' objection is meritless.

The only case cited by defendants in support of their argument is inapposite here. *See* Defs.' Obj. 2 (citing *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 231 (S.D.N.Y. 2016)). In *Gurung*, the district court determined that a proposed FLSA settlement agreement allocated an unreasonably high proportion of the plaintiff's settlement to her attorney, approximately 57%,

---

[4] Defendants allege that the Chinese version indicates that plaintiff's attorneys are entitled to one-third. Horowitz Decl. ¶ 6.

rather than the standard 33%. 226 F. Supp. 3d at 229–30. Plaintiff's attorney argued that his retainer agreement allowed a higher, hours-based recovery. *Id.* at 230. The district court explained that "[w]hile counsel's retainer agreement with the prevailing plaintiff may certainly be considered in assessing the reasonableness of the allocation of the proposed settlement corpus, in the end, it remains the Court's authority under § 216(b) of the FLSA to determine whether the proposed fee is a 'reasonable attorney's fee.'" *Id.* at 231. This holding, applied in the different context of an FLSA settlement, is not persuasive. Thus, I decline to deduct an additional amount from Jin's attorneys' fees.

Relatedly, Judge Orenstein correctly determined that Jin's reasonable attorneys' fees should not be capped at one-third of the damages award. R&R 5; *see Millea*, 658 F.3d at 169 (explaining that it was "legal error" for the district court to disregard the lodestar amount and award attorneys' fees proportional to recovery rather than in accordance with applicable fee-shifting statute). "The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." *Millea*, 658 F.3d at 169 (emphasis in original). To the extent that defendants intended to object to that determination, *see* Defs.' Obj. 2, their objection is disregarded.

## III.   Costs

Jin seeks reimbursement for $7,725.43 in costs, for which he has submitted adequate documentation. *See* Billing Recs. 22–23; R&R 12; *see also Reiter*, 2019 WL 1641306, at *6 ("As the movant, plaintiff 'bears the burden of demonstrating the reasonableness of each charge; failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery.'" (quoting *Piedra v. Ecua Rest., Inc.*, No. 17-CV-3316, 2018 WL 1136039, at *20 (E.D.N.Y. Jan. 31, 2018))), *report and recommendation adopted by* 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018). I agree with Judge Orenstein's determination that $2,569.79 in costs are appropriately excluded because they

relate to the time Jin's counsel spent on inadequately litigating issues relating to the Flushing class. R&R 12, 16. Accordingly, plaintiffs are entitled to reimbursement for $5,155.64 in costs.

Jin objects to this exclusion, arguing that in my class decertification order, I did not require plaintiffs to cover the costs of decertification notices. Pl.'s Obj. 4; Decertification O&O. Thus, he argues, failing to compensate him for these costs contravene my order. Pl.'s Obj. 4. Jin cites no authority in support of this argument and I found none. *Id.* Accordingly, his objection is disregarded.

**IV.     I decline to impose sanctions on John Troy and the Troy Law Firm at this time.**

Judge Orenstein reasonably criticized John Troy and the Troy Law Firm's persistent practice of requesting exorbitant attorneys' fees and misusing persuasive authority in support of their requests. *See* R&R 6–7. In particular, I find troubling Mr. Troy's seemingly intentional practice of misciting cases in order to disguise the district in which they were decided. *See, e.g.*, Pl.'s Br. 9 (citing *Shen v. Number One Fresco Tortillas*[5] as evidence that Ms. Huang was previously awarded an hourly rate of $100, but excluding the portion of the citation indicating that the case was decided in the Southern District of New York); Troy Decl. ¶ 54 (same); *see also A&A Market Plaza*, 2019 WL 4861882, at *8 n.3 (highlighting a similar practice).[6] In light of the Forum

---

[5] *See Shen v. Number One Fresco Tortillas*, No. 16-CV-2015 (RWL), 2018 WL 6712771 (S.D.N.Y. Nov. 26, 2018) (a Decision & Order issued in the same case).

[6] Judge Tomlinson explained that:

> [a]lthough he has cited *Singh et al. v. Dany Restoration Inc. et al.*, 1:17-cv-3787, as a case in which he was previously awarded $400.00 per hour, Attorney Troy failed to provide the appropriate citation indicating the district court in which the case was litigated. However, through its own research, the Court has discovered that *Singh et al. v. Dany Restoration Inc. et al.*, a 2018 case pending in the Southern District of New York where hourly rates are higher than the Eastern

Rule, which instructs district courts to "generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee," *Restivo*, 846 F.3d at 590, this practice is unacceptable. In line with Judge Reyes's discussion in *Sajvin v. Singh Farm Corp.*, Troy is not barred from arguing that the standard hourly rates in the Eastern District should be increased to mirror those in the Southern District. No. 17-CV-04032, 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018) (awarding an hourly rate above the Eastern District standard, noting that "[t]he passage of time warrants an increase of attorney's fees" and highlighting the disparity between hourly rates in the Southern and Eastern districts). He must, however, be clear that he argues for a departure from the standard Eastern District rates, rather than obfuscating case citations to mislead the court. I do not discount the possibility of disciplinary sanctions in the future, should this or similar conduct continue. Nevertheless, I decline to impose disciplinary sanctions at this time.

## CONCLUSION

For the foregoing reasons, I adopt the R&R in part and revise it in part. I agree that, though untimely, Jin's attorneys' fees application should be considered on the merits. I also adopt the R&R's hourly rates and cost calculation and decline to reduce the fee award as a result of the alleged retainer agreement. I reduce, however, the hours for which Jin's attorneys may be compensated and decline to impose sanctions at this time. Thus, I award plaintiff $31,481.70 in reasonable attorneys' fees and $5,155.64 in costs, for a total award of $36,637.34. The Clerk of Court is directed to enter judgment accordingly and close the case.

---

District. *See Singh et al. v. Dany Restoration Inc. et al.*, 1:17-cv-3787 (S.D.N.Y.) at DE 83. Of note, Judge Furman denied Attorney Troy the $450 fee which he sought in that case. *Id.* at DE 79.

*A&A Market Plaza*, 2019 WL 4861882, at *8 n.3.

SO ORDERED.


Date:   August 18, 2020                                    _____/s/_____
        Brooklyn, New York                                 Allyne R. Ross